ROBERT G. DODGE & others vs. THE PRUDENTIAL INSURANCE
COMPANY of AMERICA & others.

Suffolk.    November 7, 1961. — December 20, 1961.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Redevelopment of Land. Boston. Constitutional Law*, Opinions of the
Justices, Due process of law, Public purpose, Redevelopment of land,
Taxation, Delegation of powers, Police power. *Contract*, Validity,
Police power, For exemption from taxation, For redevelopment of land.
*Taxation*, Real estate tax: exemption. *Corporation*, Insurance com-
pany, Foreign corporation. *Certiorari*.

A question dealt with in an advisory opinion of the Justices, upon arising
in subsequent litigation, is considered by this court anew unaffected by
the previous opinion.    [379–380]
Failure to pursue the exclusive remedy by certiorari provided by St. 1960,
c. 652, § 13, to correct errors of law in action by the Boston Redevelop-
ment Authority on an application for approval of an urban redevelop-
ment project barred thereafter in other proceedings an attack on find-
ings of the Authority as unwarranted by the evidence and an assertion
of other errors of law in the Authority's action.    [380–381, 382]
The exclusive remedy by certiorari provided by St. 1960, c. 652, § 13, to
correct errors of law in action by the Boston Redevelopment Authority
on an application for approval of an urban redevelopment project is a
constitutionally adequate means of judicial review.    [381–382]
The elimination of a blighted open area as defined in G. L. c. 121A, § 1,
as amended through St. 1960, c. 652, § 1, is a public purpose even though
the area be rebuilt with buildings other than residential buildings.
[383]
Upon adequate findings by the Boston Redevelopment Authority showing
that the area of a proposed urban redevelopment project under G. L.
c. 121A, as amended through St. 1960, c. 652, was a blighted open area
as defined therein, so that its elimination was a public purpose, tax con-
cessions granted pursuant to c. 121A, as amended, would be constitu-
tional.    [383–384]
G. L. c. 121A, as amended through St. 1960, c. 652, and §§ 12, 13, of
c. 652 provide adequate standards for exercise of the legislative author-
ity delegated therein respecting urban redevelopment projects in Boston,
and provide adequately for accounting requirements and other forms
of continuing public regulation of such projects.    [384–385]
There would be no valid constitutional objection to the undertaking of

an urban redevelopment project under G. L. c. 121A, by a large foreign insurance company doing business in many States and authorized to transact business in Massachusetts.   [386–388]

A project contract made between a city and a company undertaking an urban redevelopment project under G. L. c. 121A, as amended through St. 1960, c. 652, providing as allowed by § 6A that without mutual consent amendments of c. 121A or St. 1960, c. 652, or of the applicable rules, regulations and standards should not affect the project would ensure that thereafter the project could not be changed except by exercise of the police power in particulars closely related to the public health, morals, safety, or general welfare, nor could "any [tax] burdens with respect to the project be imposed" on the company.   [388–389]

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on August 15, 1961.

The suit was reserved and reported by *Spiegel*, J., without decision.

*Alfred Gardner*, stated the case.

*William J. Speers, Jr.*, for the defendant New England Merchants National Bank of Boston.

*Edward J. McCormack, Jr.*, Attorney General, pro se.

*Loring P. Jordan, Jr., & James D. St. Clair*, for the defendant The Prudential Insurance Company of America.

*Lewis H. Weinstein*, for the defendant Boston Redevelopment Authority.

*William H. Kerr*, for the defendant city of Boston.

WILKINS, C.J.   This bill for declaratory relief under G. L. c. 231A is reported without decision by a single justice.   G. L. (Ter. Ed.) c. 214, § 31.   The plaintiffs are members of a Boston law partnership which is the depositary of duplicate originals of a signed, but undelivered, lease under an agreement with the defendants The Prudential Insurance Company of America and New England Merchants National Bank of Boston.   The plaintiffs are stakeholders with no pecuniary interest in the outcome of this case. Other defendants are the city of Boston and Boston Redevelopment Authority, a public body politic and corporate, organized under G. L. c. 121, § 26QQ (as amended through St. 1958, c. 299).   Notice was sent to the Attorney General pursuant to G. L. c. 231A, § 8.

The case is reported upon the bill, the answer, the ac-

knowledgment of notice by the Attorney General, and a stipulation. Filed with and incorporated in the bill are a number of exhibits.[1] The answer is that of all the defendants and admits the allegations of the bill. The stipulation by all the parties is that their rights shall be determined from the facts alleged in the bill; that these are all the material, ultimate facts from which their rights are to be determined; and that the court may draw any inferences as upon a case stated. See G. L. (Ter. Ed.) c. 231, § 126.

The deposit agreement, dated April 7, 1961, and amended July 20, 1961, recites in Section I that Prudential, as lessor, and the bank, as lessee, have executed the lease which relates to the banking unit of the Prudential center (in the Back Bay area of Boston) which is to be the bank's principal office, ''but have not delivered it as they do not want it to become effective until certain conditions have been met because it requires extensive expenditures by both parties immediately after its delivery, and if the conditions cannot be met, the amounts so expended might be lost.'' The plaintiffs are to deliver the original leases if the conditions of the deposit agreement have been met; otherwise they are to destroy them.

The bill seeks a declaration whether the conditions have been met, and makes these allegations. On January 3, 1961, Prudential filed with the Authority an application for the approval of a project to be built at the center. On March 22 a public hearing was held by the Authority. On June 14 the application was amended. On July 7 another public hearing was held. On August 14 the Authority published its report approving the amended application. It found that the project area is a blighted open area; and that the project will be practicable, will not conflict with the master plan for the city, will not in any way be detrimental to the best interests of the public or of the city or to the public safety and convenience, will not be inconsistent with

---

[1] The rules of the Authority; the notices of hearing; a list of abutters; the original and amended applications of Prudential for approval of the center; transcripts of the hearings before the Authority on the respective applications; a draft of the project contract; the report of the Authority; the deposit agreement; two letters to the depositary, one from the bank and one from Prudential; and the depositary's letter in reply.

the most suitable development of the city, and will consti-
tute a public use and benefit. The project includes land
within a location approved by the department of public
works for the extension of the Massachusetts Turnpike.
The Massachusetts Turnpike Authority has determined
that the project will not unreasonably interfere with the
extension. On August 14 the mayor approved the action
of the defendant Authority in approving the project, and
the Authority issued a certificate of approval. On August
14 a copy of the vote of the Authority approving the appli-
cation as amended, attested by the secretary of the Author-
ity, and a copy of the mayor's approval of such vote were
filed with the city clerk. On August 15 the Commissioner
of Insurance gave the approval required by G. L. c. 121A,
§ 18 (as amended through St. 1960, c. 652, §§ 7–11). The
amended application provided for the execution and deliv-
ery by Prudential and the city, acting through its mayor, of
the project contract required by G. L. c. 121A, § 6A (in-
serted by St. 1960, c. 652, § 5).

The deposit agreement in Section III sets forth five con-
ditions to be satisfied before the plaintiffs are to deliver the
original leases. Four of these have been met. They are
(1) approval by the Authority of the project with such
changes in the application as are approved by the bank;
(2) the mayor's approval of the action of the Authority;
(3) the Authority's issuing of a certificate of approval;
and (4) approval of the project by the Commissioner of
Insurance.

The fifth condition the bank contends has not been met.
The other defendants and the Attorney General argue that
it has. This condition poses a number of questions of law
affecting the project and the project contract, and is quoted
in full in a footnote.[1]

---

[1] "Section III. . . . (e) after the contract required by § 6A of G. L.
c. 121A as amended by St. 1960, c. 652, between the insurance company and
the city of Boston in the form specified in the amended application as approved
by the authority shall have been executed and delivered by the parties thereto
(referred to below as the project contract) :—

(1) The project as described in the amended application, as approved by
the authority in its certificate of approval, is a project as defined in G. L.

Various questions relating to the Prudential center were considered in *Opinion of the Justices,* 341 Mass. 760, the subject of which was a bill, Senate No. 634 of 1960. That bill contained proposed amendments to G. L. c. 121A and special provisions for projects in Boston, and with amendments, mostly slight, became St. 1960, c. 652. Many of the

---

c. 121A, § 1; all of the conditions which G. L. c. 121A as amended provides must be met to empower the authority to authorize the insurance company to undertake and carry out the project have been met; and all steps have been taken to authorize the insurance company to undertake and carry out the project in the location and in the manner described in the application as amended

(2) Except within the proper exercise of the police power, neither can the project as described in the amended application as approved by the authority in its certificate of approval be changed thereafter nor can any burdens with respect to the project be imposed on the insurance company thereafter:

(i) by the General Court by any amendment of G. L. c. 121A as amended and supplemented by St. 1960, c. 652, or by any other legislation; or

(ii) by the authority by the amendment of its regulations or by any other action; or

(iii) by any action by the city of Boston; or

(iv) by any action by any other governmental subdivision or agency of the Commonwealth of Massachusetts.

(3) The project contract will be a valid contract between the insurance company and the city of Boston which is binding on the city of Boston and on the insurance company as to all of its terms and provisions.

(4) The project contract cannot be changed

(i) by the General Court by any amendment of G. L. c. 121A as amended and supplemented by St. 1960, c. 652, or by any other legislation; or

(ii) by the authority by the amendment of its regulations or by any other action; or

(iii) by any action by the city of Boston; or

(iv) by any action by any other governmental subdivision or agency of the Commonwealth of Massachusetts.

(5) Neither the Commonwealth of Massachusetts nor the city of Boston nor any other governmental subdivision of the Commonwealth of Massachusetts will have power to impose any tax or betterment assessment or otherwise impose liability on the insurance company for any payments to the Commonwealth of Massachusetts or the city of Boston or to any other governmental subdivision of the Commonwealth with respect to the real estate and personal property that will constitute the project in excess of (i) the amounts to be paid to the city of Boston as provided in the project contract plus (ii) the taxes specified in G. L. c. 121A as amended and supplemented by St. 1960, c. 652, as such statutes are in effect on the date of the delivery of the executed project contract.

(6) Neither the constitution of the United States nor the constitution of the Commonwealth of Massachusetts will have been violated

(i) by the application to the project or to the insurance company with respect to the project of any of the provisions of G. L. c. 121A as amended and supplemented by St. 1960, c. 652; or

(ii) by any action theretofore taken by the authority with respect to the project; or

(iii) by the action of the city of Boston in entering into the project contract; or

(iv) by any other action theretofore taken by the mayor or by the city of Boston with respect to the project."

same questions are now raised by the bank, and we shall, as we proceed, consider them anew unaffected by the advisory opinion. *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 245, n. *Lincoln* v. *Secretary of the Commonwealth,* 326 Mass. 313, 314. *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 336 Mass. 651, 655–656. *Opinion of the Justices,* 341 Mass. 738, 748.

1. We first consider a contention of the bank that the project "as acted on by the Authority is not 'a project as defined in G. L. c. 121A, § 1,'" as required by the first clause in Section III (e) (1) of the deposit agreement. In so doing, the bank seeks to attack certain findings of the Authority as not supported by the record. Findings assailed are that the project area is a blighted open area, and that the purpose of the project is predominantly public.[1]

The last paragraph of St. 1960, c. 652, § 13,[2] however, provides an exclusive remedy by petition for a writ of certiorari to be filed within thirty days of the filing of a copy of a final vote of the Authority with the city clerk in order "to correct errors of law therein." To make a finding not warranted by the evidence is an error of law. *Lawrence* v. *Commissioners of Pub. Works,* 319 Mass. 700, 702. *A. B. & C. Motor Transp. Co. Inc.* v. *Department of Pub. Util.* 329 Mass. 719, 722. The petition may be filed by "any person, whether previously a party to the proceeding or not, who is aggrieved by such vote." The bank and Prudential entered into the deposit agreement and entrusted

---

[1] The wording of the finding is that "the project will constitute a public use and benefit." This is in the language of St. 1960, c. 652, § 13.

[2] "When any vote of the authority under this or the preceding section becomes final, the secretary of the authority shall file with the city clerk of the city of Boston a copy of such vote attested by such secretary with, in cases where approval of such vote by the mayor is required, a copy of such approval likewise attested. Within thirty days after such filing, any person, whether previously a party to the proceeding or not, who is aggrieved by such vote, or any municipal officer or board, may file a petition in the supreme judicial or superior court sitting in Suffolk County for a writ of certiorari against the authority to correct errors of law therein; and the provisions of section one D of chapter two hundred and thirteen, and of section four of chapter two hundred and forty-nine, of the General Laws, shall apply to said petition except as herein provided with respect to the time for the filing thereof. The remedy provided by this paragraph shall be exclusive."

the leases to the plaintiffs on April 7, 1961, more than four months before the filing of the copy of the final vote of the Authority. If the bank was aggrieved, there was ample opportunity to use the exclusive remedy for direct attack.

The bank argues that the action of the Authority, if lawful and constitutional, was acceptable to it, and hence it was not aggrieved. Yet upon the expressed premise of the deposit agreement that extensive expenditures would be required of it after delivery of the lease, the bank has put itself in the position of entering into a contract with Prudential to move its principal office to the center and becoming involved in a controversy from which it seeks to extricate itself by these proceedings. We incline to the opinion that the bank was aggrieved. In a statute of this sort the words "persons aggrieved" are to be given a comprehensive meaning. *Godfrey* v. *Building Commr. of Boston,* 263 Mass. 589, 591. *Standard Oil Co.* v. *Commissioner of Pub. Safety,* 274 Mass. 155, 158. See *American Can Co.* v. *Milk Control Bd.* 313 Mass. 156, 160. But if it was not, that circumstance would not open up to it new avenues of review. In particular, there would not be conferred upon the bank another remedy to attack directly at an indefinite future date the validity of the preliminary steps to the final action of the Authority and to challenge the Authority's findings, and so to jeopardize intervening rights.

We must here consider the bank's objections, asserted almost without citation of authority, that the provisions for judicial review in St. 1960, c. 652, § 13, are constitutionally inadequate in that (1) the scope of review upon certiorari is too narrow, because only errors of law are included; (2) the definition of person aggrieved omits "persons whose basic rights could be seriously affected"; and (3) the thirty day period is unreasonably short. The only constitutional citation is to art. 11 of the Declaration of Rights, but we assume that the Fourteenth Amendment to the Constitution of the United States is relevant. The first two grounds of complaint merit little discussion. As to them we adopt what was said in *Opinion of the Justices,* 341

Mass. 760, 777–778.   Our conclusion is not affected by the
fact that there was added to the last paragraph of § 13 of
St. 1960, c. 652, the concluding sentence, "The remedy pro-
vided by this paragraph shall be exclusive," which was not
in Senate No. 634 of 1960.   As to the third objection, we
are of opinion that considering the nature of the legisla-
tion, which was declared an emergency law by the Gov-
ernor, and the public purpose intended to be served, the
time was not so short as to be unreasonable.   See *Mulvey*
v. *Boston*, 197 Mass. 178, 182–185; *Hirsch* v. *Goldstein*, 265
Mass. 358, 359; *Bellingham Bay & British Columbia R.R.* v.
*New Whatcom*, 172 U. S. 314; *Campbell* v. *Olney*, 262 U. S.
352, 354; *Wick* v. *Chelan Elec. Co.* 280 U. S. 108, 110–111.
See also *Tacoma* v. *Taxpayers of Tacoma*, 357 U. S. 320,
335–336.

The procedure by petition for a writ of certiorari, al-
though valid, was not availed of by anyone.   Therefore,
direct attack on the findings of the Authority has been fore-
closed, and those findings are conclusive.   There is nothing
further which the first clause of Section III (e) (1) requires.

Similarly we need not consider as now open the bank's
contentions (1) that the Authority committed errors of law
in approving an application permitting Prudential four
widely varying alternatives for the development of a part
("Lot B") of the project area; and (2) that there is a fatal
defect in the entire action of the Authority because of fail-
ure to comply with the State administrative procedure act,
G. L. c. 30A, §§ 2, 3, in promulgating rules for securing the
approval of projects.

The parties are in agreement that the conditions stated in
the other clauses of Section III (e) (1) have been satisfied.

2.   The sixth term of the fifth condition, Section III (e)
(6), reads: "Neither the constitution of the United States
nor the constitution of the Commonwealth of Massachusetts
will have been violated (i) by the application to the project
or to the insurance company with respect to the project of
any of the provisions of G. L. c. 121A as amended and sup-
plemented by St. 1960, c. 652; or (ii) by any action thereto-

fore taken by the authority with respect to the project; or (iii) by the action of the city of Boston in entering into the project contract; or (iv) by any other action theretofore taken by the mayor or by the city of Boston with respect to the project."

No provision of either Constitution is mentioned in the deposit agreement. We decide this case having in mind the provisions referred to by the bank in its brief: Constitution of the United States, art. 1, § 10, and the Fourteenth Amendment; Constitution of the Commonwealth, arts. 1, 10, 11, and 30 of the Declaration of Rights; Part II, c. 1, § 1, art. 4; art. 39 of the Amendments. See *Opinion of the Justices,* 297 Mass. 559, 566–567; *Opinion of the Justices,* 328 Mass. 679, 691; *Opinion of the Justices,* 336 Mass. 765, 770. See also *Wright* v. *Peabody,* 331 Mass. 161, 164, and cases cited.

Some of the bank's contentions contain somewhat categorical denials of the soundness of certain constitutional principles expressed in *Opinion of the Justices,* 341 Mass. 760. In each respect we shall adhere to and adopt the reasoning of that opinion.

(a) The elimination of a blighted open area as defined in G. L. c. 121A, § 1 (as amended through St. 1960, c. 652, § 1) is a public purpose. *Opinion of the Justices,* 341 Mass. 760, 776–777, 780–781. Consideration may properly be given to the prevention of the development of slums adjacent to the blight. There is no constitutional requirement that the project must fail as a public purpose because a cleared area is to be rebuilt with buildings which are not dwellings, or that a blight, if removed in the course of urban redevelopment, particularly if it is found to be one not about to be eliminated by private capital, must be replaced by residential buildings. *Opinion of the Justices,* 341 Mass. 760, 776–777.

In *Opinion of the Justices,* 341 Mass. 760, 778, there was a quotation, which we now adopt, from *Opinion of the Justices,* 334 Mass. 760, 763, which stated that since "urban redevelopment corporations, although in a sense private

corporations, perform functions for the public benefit anal-
ogous to those performed by various other types of corpo-
rations commonly called public service corporations, prop-
erty owned by them and used in such service may receive
favored treatment in the matter of taxation.'' Once a pub-
lic purpose is established, it exists for all purposes includ-
ing exemption from taxation. *Allydonn Realty Corp.* v.
*Holyoke Housing Authy.* 304 Mass. 288, 297. *Cabot* v. *As-
sessors of Boston,* 335 Mass. 53, 64–65.

The initial tax concession can be upheld where the
Authority has made the findings which it has. As the Jus-
tices indicated in 341 Mass. 760, 777, there are many public
advantages which the Authority could consider. Many of
these and others were found by the Authority to exist. The
project area lies in the path of, and interferes with, the
sound growth of the city. The conditions which contribute
to and result in its blighted character are not being, and in
the foreseeable future are not likely to be, remedied by the
ordinary operations of private enterprise, and are worsen-
ing. No substantial use is being made of this large, open,
undeveloped area, for many years occupied by an unsightly
railroad yard and decadent buildings. While still crossed
by tracks, the yard for use by the railroad has been aban-
doned. Site conditions, including poor topography, un-
usual underground conditions, and lack of streets and
utilities, require that the area be developed in a unified,
integrated manner. The blighted conditions are a serious
degenerating influence upon neighborhood areas, whose
buildings, originally designed for moderate cost rental
housing or marginal commercial use, have deteriorated into
nondescript low-grade housing and undesirable commercial
locations.

Therefore, we cannot agree that tax concessions granted
under G. L. c. 121A, as amended by St. 1960, c. 652, are
unconstitutional as not being in aid of a public purpose.

(b) The administrative mechanism provided by G. L.
c. 121A (as amended through St. 1960, c. 652) does conform
to constitutional requirements. There is no unconstitu-

tional delegation of legislative authority without adequate standards for its exercise. *Opinion of the Justices,* 341 Mass. 760, 774–776.

The Justices in 341 Mass. 760, 779, treated "as important, as a factor sustaining the proposed tax exemption, the continuing regulation of urban renewal projects by a public body, in much the manner in which public utilities remain subject to regulation." The bank charges that the "statutory scheme does not make acceptable provision for adequate and continuous supervision," and, in particular, that there is no provision for methods or standards of accounting. See *Opinion of the Justices,* 341 Mass. 760, 780, where the Justices said that accounting requirements are authorized as part of the regulations to be issued under c. 121A, § 4, and under § 15 of the bill, now enacted in St. 1960, c. 652, § 13.[1] There were sufficient accounting standards set forth in the application of Prudential. These were adopted by the Authority in its approval of the amended project. Although these standards of necessity make reference to "generally accepted accounting principles," the reference is not too indefinite in view of the well developed body of accounting practices available as a guide to the decision of any dispute. See Hills, Law of Accounting and Financial Statements, § 1.2 et seq., §§ 6.1– 7.6. This is most clearly the case with an insurance company, which will remain subject to continuing public regulation of its financial accounting and records, as hereinafter discussed.

It should be noted that the bank's argument has confused the standards and rules under § 13 with those made pursuant to St. 1960, c. 652, § 12, for securing the approval of projects.

The bank's suggestion, that the provisions of c. 121A, § 8, with respect to inspections and to the commencement of bills in equity to prevent violation of the plan give no ex-

[1] The sixth paragraph of § 13 provides, "Whenever the authority approves a project, it shall make and embody in its report reasonable rules and regulations setting minimum standards for the financing, construction, maintenance and management of such project in so far as the same are not specified in the application for the approval thereof."

press standards to guide the Authority, is completely lacking in merit.

Another complaint of the bank is that the "delegation to a private foreign corporation of the public functions contemplated by c. 121A is unconstitutional." There is a general reference to "our Constitution." It will meet present requirements to restrict discussion to Prudential and to the grounds of complaint given by the bank. It is said that "such delegation necessarily eliminates essential factors of supervision, and weakens the controls provided to an unacceptable extent." Three objections are made. (1) A large insurance company is not an instrumentality of the Commonwealth but remains a private person engaged in business in many States for the purpose of serving the interests of its policyholders. (2) It remains subject to regulation, control, or dissolution by the State of its domicil, as well as by other States, and could become incapable of carrying out the duties and obligations assumed. (3) The ordinary exigencies of its other business might render it financially unable to perform the duties and obligations relating to the project, or might subject it to receivership or a court of bankruptcy and, hence, the rights of the Commonwealth could become subordinated.

The third objection we dispose of first. It would apply to every type of corporation, whether foreign or domestic, and is really an argument against all delegation. It falls of its own weight.

In turning to the first and second objections we observe that the first paragraph of G. L. c. 121A, § 18 (as amended through St. 1960, c. 652, § 7) reads in part, "An insurance company incorporated under the laws of the commonwealth or authorized to transact business in the commonwealth . . . may with the approval of the commissioner of insurance, itself undertake on land owned or to be acquired by it, one or more projects under this chapter . . . ."

These objections of the bank, carried to their logical conclusion, would limit the power to operate a project to domestic corporations doing only an intrastate business.

As a practical matter, this might nearly nullify the statute. There is, however, no constitutional basis which we perceive requiring such an unfortunate result. In *Berman* v. *Parker,* 348 U. S. 26, which the bank forbears to cite, the District of Columbia Redevelopment Act of 1945 was upheld in a unanimous opinion. The court first noted, "The power of Congress over the District of Columbia includes all the legislative powers which a state may exercise over its affairs" (page 31), and later went on to say: ". . . the means of executing the project are for Congress and Congress alone to determine, once the public purpose has been established. . . . The public end may be as well or better served through an agency of private enterprise than through a department of government — or so the Congress might conclude. We cannot say that public ownership is the sole method of promoting the public purposes of community redevelopment projects" (pages 33–34). The *Berman* case is conclusive of any question respecting the constitutionality under the Constitution of the United States of the Prudential project. In addition, its reasoning is decisive under our Constitution as to contentions respecting the instrumentalities which have been chosen by the Legislature.

It will be noted that c. 121A, § 18, does not refer to any foreign insurance company but only to one "authorized to transact business in the commonwealth." Consequently, in addition to the regulation provided by c. 121A, the company would be subject to the many provisions of G. L. c. 175. See particularly § 151 (as amended through St. 1961, c. 168, § 7) and § 153, prescribing conditions of admission; § 151, Third, and § 154, providing for service of process on the Commissioner of Insurance as attorney; § 3A as to the supervisory powers of the Commissioner of Insurance; § 4 (as amended through St. 1941, c. 324) as to examinations respecting a company's financial condition and investigation of complaints; § 9 (as amended through St. 1961, c. 368, § 6) as to computation by the Commissioner of the reserves of life insurance companies; § 25 (as amended through

St. 1958, c. 177) as to annual statements; and § 23A, requiring notice to the Commissioner of any impairment of its capital stock or deposit or guaranty capital or guaranty fund.

So far as we can now determine, and for all purposes of this case, the requirements of Section III (e) (6) have been met.

3. The second term of the fifth condition, Section III (e) (2), succinctly stated, is that "Except within the proper exercise of the police power" the project as described in the amended application and approved by the Authority cannot be changed or "any burdens with respect to the project be imposed" thereafter upon Prudential by the Legislature, the Authority, the city, or "any other governmental subdivision or agency of the Commonwealth."

This necessarily must refer to paragraph 4 of the proposed project contract. No contrary contention has been made. Paragraph 4 reads in part: "The company and the city agree with each other that, without mutual consent, any amendment, subsequent to the delivery of this contract, of any of the provisions of said Chapter 121A of the General Laws or of Chapter 652 of the Acts of 1960 or of the Rules, Regulations and Standards now applicable to the project shall not affect the project." As we shall discuss presently, this contract provision was authorized by c. 121A, § 6A, inserted by St. 1960, c. 652, § 5.

The bank in substance argues that this sentence in the contract is an undue restriction on the police and taxing powers. In *Opinion of the Justices*, 341 Mass. 760, 783–786, the Justices considered two questions submitted by the Legislature the affirmative answers to which we adopt. These answers are decisive against the bank's argument. Question 7 was whether the Legislature by the proposed new § 6A of c. 121A may authorize cities and towns to provide by contract that a project is not to be affected by any subsequent amendment either of c. 121A or of any rule, regulation, or standard affecting such project. Question 9 asked whether such a contract, if made, will so bind the

Commonwealth that subsequent amendments of c. 121A, especially § 10, which provides tax exemption, will not apply to the project.

Section 6A has been adopted in St. 1960, c. 652, § 5, in the precise form considered by the Justices. It provides that a corporation and a city shall contract for the carrying out of an approved project "in accordance with the application, the provisions of this chapter, and the rules, regulations and standards prescribed" for the project, and states, "Such contract may provide that, without mutual consent, any subsequent amendment of any such provisions, rules, regulations and standards shall not affect the project." The Justices interpreted this sentence as limiting governmental power only with respect to matters which "furnish a sound basis for proceeding with the necessary investment" and not as precluding changes "which deal with matters of general regulation of the community in a manner closely related to its health, morals, safety, and fundamental welfare" (pages 785–786). By way of example of permissible contract provisions, the Justices referred to the forty year period mentioned in c. 121A, as proposed to be amended, during which "the project would be subject to State and local taxes and excises only in accordance with the contract and the provisions of c. 121A in force at the time of the contract," and stated that it would be proper to agree that for forty years or a longer reasonable period "provisions for determining the project owner's income return and dividends would not be altered" (page 786).

We see no present occasion to analyze the effect of the prohibition against the impairment of the obligation of a contract by a State contained in art. 1, § 10, of the Constitution of the United States.

It has not been suggested that the word "burdens" in the second term of the fifth condition is intended to relate to anything but tax burdens.

We are of opinion that Section III (e) (2) has been complied with.

4. The remaining terms of the fifth condition, Section III (e) (3), (4), (5) raise no new point. Construing the

phrase "otherwise impose liability" to refer to tax liability, we believe that these terms have been met.

5.   A final decree is to be entered declaring that the conditions stated in the deposit agreement have been met, and directing the plaintiffs as the depositary to make delivery of the leases to counsel for Prudential and to counsel for the bank as provided in the deposit agreement.

*So ordered.*