## THE PRUDENTIAL INSURANCE COMPANY OF AMERICA *vs.* CITY OF BOSTON.

Suffolk. November 7, 1975. — January 13, 1976.

Present: QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Rent Control. Redevelopment of Land. Boston. Contract,* For redevelopment of land. *Statute,* Construction.

Where the city of Boston entered into a contract with a private corporation to construct apartments pursuant to G. L. c. 121A, and thereafter accepted St. 1970, c. 842 (rent control act), the provisions of the rent control act were applicable to such rental units since the units did not fall within the list of mandatory exemptions under c. 842, § 3 (*b*) (1)-(6), nor had the city exercised its option under c. 842, § 3 (*b*) (7) to exempt the units from the provisions of the rent control act. [545-546]

A contract between the city of Boston and a private corporation, which incorporated the provision authorized by G. L. c. 121A, § 6A, that "without mutual consent, any amendment, subsequent to the delivery of [the] contract, of any of the provisions of said Chapter 121A of the General Laws or of Chapter 652 of the Acts of 1960 or of the Rules, Regulations and Standards now applicable to the Project shall not affect the Project," did not preclude the application of St. 1970, c. 842 (rent control act), to rental units constructed pursuant to the contract. [546-550]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on November 21, 1973.

The case was reserved and reported by *Hennessey, J.*

*Robert E. Fast (F. Anthony Mooney* with him) for The Prudential Insurance Company of America.

*Thomas H. Martin (Herbert P. Gleason,* Corporation Counsel, with him) for the city of Boston.

HENNESSEY, J. The plaintiff, The Prudential Insurance Company of America (Prudential), commenced this action in the county court to obtain a declaratory judgment as

to the applicability of St. 1970, c. 842 (rent control act), to the Prudential Center apartments, which were constructed pursuant to G. L. c. 121A, as amended by St. 1960, c. 652. The parties jointly submitted the case for decision on a statement of agreed facts, and a single justice of this court reserved and reported the matter to the full court without decision for a determination of issues of first impression. We conclude that the rent control act is applicable to the Prudential Center apartments.

Prudential is a mutual life insurance company organized and existing under the laws of the State of New Jersey, with principal offices in Boston, Massachusetts. In March, 1962, Prudential entered into a contract with the city of Boston (the city) whereby Prudential agreed to finance, construct, maintain and manage a redevelopment project, known as the Prudential Center complex, in the Back Bay area of Boston. The project, which consists of commercial buildings, apartments and open public areas, was undertaken in accordance with the provisions and purposes of G. L. c. 121A. Prudential acquired the land for the project by purchase and paid all the costs for the land acquisition and redevelopment from its own funds. The project, as required by statute, was approved by both the Boston Redevelopment Authority (BRA) and the Commissioner of Insurance.

The contract between Prudential and the city, as mandated by c. 121A, § 6A, incorporates the statutory scheme set forth in that chapter. Basically, c. 121A is designed to stimulate the investment of private capital in blighted open, substandard or decadent areas. G. L. c. 121A, § 2. In order to encourage privately financed urban renewal, the statute provides that a project undertaken by a qualified applicant, such as an insurance company, is exempt from State and local taxation, including betterments and special assessments, for a period of forty years. G. L. c. 121A, §§ 10, 18 (g). In lieu thereof, the statute imposes excise taxes and provides that a contract also may

include, as was done in the present case, payments to the city in addition to the prescribed excise. G. L. c. 121A, § 10.

Under c. 121A, § 18 (*f*), as also reflected in the contract with the city, Prudential is entitled, as net income from the project, to a six per cent return on its investment in the project. In the event that the cumulative net return in a given year is less than six per cent, § 18 (*f*) permits the deficiency without interest to be recouped as an offset against any excess return on investment in subsequent years. On the other hand, if Prudential's gross receipts in any year exceed specified expenses, deductions, and other enumerated items, including the six per cent return, § 15 provides for what is essentially contingent, additional taxation of the project. See n.2, *infra*. In addition to these provisions, par. 4 of Prudential's contract with the city provides, as authorized by § 6A,[1] that "[t]he Company and the City AGREE . . . that, without mutual consent, any amendment, subsequent to the delivery of this contract, of any of the provisions of said Chapter 121A of the General Laws or of Chapter 652 of the Acts of 1960 or of the Rules, Regulations and Standards now applicable to the Project shall not affect the Project."

Subsequent to entering into the contract with Prudential, the city council passed an order on November 27, 1972, accepting the provisions of the rent control act. On December 2, 1972, the mayor of Boston approved the order and the rent control act became effective in the city on January 1, 1973. Thereafter, the rent control administrator, appointed by the mayor, promulgated regulations to effectuate the rent control act including pro-

---

[1] General Laws c. 121A, § 6A, inserted by St. 1960, c. 652, § 5, provides in part: "Such contract may provide that, without mutual consent, any subsequent amendment of any such provisions, rules, regulations and standards [prescribed by the housing board or the Boston Redevelopment Authority, in the case of Boston] shall not affect the project."

visions for the registration of all rental units. Prudential registered the apartment units in the Prudential Center complex under protest, claiming that these apartments are not subject to the rent control act.

It is Prudential's contention that G. L. c. 121A, and the contract, which parallels the statute, entitle it to an unlimited return on its investment on the apartment units in particular, as well as on the project as a whole, subject only to the tax liability formula set forth in G. L. c. 121A.[2] Prudential argues that as a result of G. L. c. 121A, § 6A, see n.1, *supra*, and par. 4 of the contract, which provides that the project shall not be affected by any subsequent amendment of any of the provisions of c. 121A or of any rules, regulations and standards of the BRA then applicable to the project, it follows that the city may not impose rent control on the Prudential apartments, since rent control limits a landlord's return on residential units to a "fair net operating income."[3] St. 1970, c. 842, § 7. According to Prudential, because the application of the rent control act to the apartments would conflict with its right to unlimited income, thereby constituting, in effect, an amendment to c. 121A and the contract in violation of § 6A and par. 4, § 6A should be

---

[2] As already noted, under §§ 10 and 18 (g), a redevelopment project undertaken by an insurance company is exempt from State and local taxation, betterments and special assessments for a period of forty years unless, in a given year, the project generates gross receipts in excess of the project's expenses, the six per cent rate of return permitted under § 18 (f), amortization, and other allowable deductions under § 15. In that event, § 15 provides that the excess is to be applied first to pay real estate and personal property taxes which would be otherwise payable in that year but for the § 10 exemption, and, second, to reduce the indebtedness on the project or to renovate, improve or expand it.

[3] "Fair net operating income" was interpreted by this court as requiring rents to be set so as to assure to landlords a reasonable return on their investment. *Marshal House, Inc.* v. *Rent Control Bd. of Brookline*, 358 Mass. 686, 703 (1971).

interpreted so as to preclude the application of rent control to c. 121A projects. We cannot agree.

At the outset we note, and the parties concede, that the rent control act[4] does not include rental units built pursuant to c. 121A within the list of mandatory exemptions. St. 1970, c. 842, § 3 (b) (1)-(6). Nor has the city, in accepting the rent control act, exercised the option provided by § 3 (b) (7) to exempt up to twenty-five per cent of the total rental units in the municipality. We must presume that the Legislature was aware of pre-existing law, including c. 121A, *Condon* v. *Haitsma,* 325 Mass. 371, 373 (1950); *Selectmen of Topsfield* v. *State Racing Comm'n,* 324 Mass. 309, 313 (1949), and that although c. 121A rental housing could have been exempted from rent control, the Legislature chose not to do so.

Nonetheless, the question remains whether that portion of § 6A (see n.1, *supra*) which appears in par. 4 of the contract is to be interpreted so as to preclude the application of rent control to the Prudential apartments. In light of our prior decisions interpreting § 6A[5] and established canons of statutory construction, it is our opinion that § 6A is to be read narrowly so as not to insulate the Prudential apartments from the rent control act.

It is well settled that when a statute is construed its words are to be given their usual and ordinary meaning considered in light of the aim to be accomplished by the Legislature. *Sun Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 340 Mass. 235, 238 (1960). *A. Belanger & Sons, Inc.* v. *Joseph M. Concannon Corp.,* 333 Mass. 22, 25 (1955). We find no indication from the unambiguous wording of § 6A, which refers only to future

---

[4] The constitutionality of the rent control act was upheld in *Marshal House, Inc.* v. *Rent Control Bd. of Brookline, supra.* For an extensive discussion of the rent control act, see Bloom & Newman, Rent Control, 1974 Ann. Surv. of Mass. Law §§ 19.1-19.5.

[5] *Dodge* v. *Prudential Ins. Co.,* 343 Mass. 375 (1961). *Opinion of the Justices,* 341 Mass. 760 (1960).

amendments to c. 121A or the rules, regulations and standards prescribed by the BRA (in the case of Boston), that the Legislature intended to extend the coverage of § 6A to enactments or amendments not specified therein. It is the function of the court to construe a statute as written and an event or contingency for which no provision is made does not justify judicial legislation. *Harry Alan Gregg, Jr. Family Foundation, Inc.* v. *Commissioner of Corps. & Taxation,* 330 Mass. 538, 544 (1953). Furthermore, we must not lose sight of the fact that we are here dealing with a public grant, which is to be "construed strictly against the grantee. Nothing will be included in the grant except what is granted expressly or by clear implication." *Attorney Gen* v. *Jamaica Pond Aqueduct Corp.,* 133 Mass. 361, 365-366 (1882). *Boston Elevated Ry.* v. *Commonwealth,* 310 Mass. 528, 564 (1942). See *Sullivan* v. *Boston Retirement Bd.,* 359 Mass. 228, 230 (1971); *Proprietors of the Charles River Bridge* v. *Proprietors of the Warren Bridge,* 36 U.S. (11 Pet.) 420, 545-546 (1837).

Nor do we find support for Prudential's contention in our review of the legislative history of c. 121A, as amended by St. 1960, c. 652. The Attorney General, when submitting what in effect became St. 1960, c. 652, explained that the proposed legislation was designed in part to satisfy the requirements of Prudential. See 1960 Senate Doc. No. 634. According to the Attorney General's communication to the Legislature, the board of directors of Prudential had voted to abandon work on the project pending the passage of legislation which would codify or in some other manner make irrevocable an existing, informal agreement with the city concerning the method of assessing real estate taxes. *Ibid.* It would appear that c. 121A, as amended by St. 1960, c. 652, was introduced in large measure to provide Prudential with some assurance that the tax concessions which it had obtained from the city would not be subject to change; there is no indication that the statutory scheme was in-

tended to protect Prudential from unspecified statutory or regulatory changes that might affect the financial basis of the project.

Furthermore, we believe that the result we announce today is consistent with our prior statements interpreting § 6A. In *Opinion of the Justices,* 341 Mass. 760 (1960), the Justices rendered their opinion that the proposed amendments to c. 121A, appearing in 1960 Senate Doc. No. 634, did not violate the Constitution. In responding to two questions propounded by the Legislature relating to the constitutionality of § 6A,[6] the Justices cautioned against an expansive interpretation of that section. 341 Mass. at 785. In light of the principle that a statute must be construed, if fairly possible, so as to avoid serious constitutional doubts, the Justices considered it necessary to read the provision in § 6A, which is at issue in the present case, "sufficiently narrowly to ensure its constitutional validity." *Ibid.* The Justices interpreted this provision of § 6A as authorizing "cities and towns to agree that, for a reasonable period, the project will not be affected by amendment of those provisions of c. 121A . . . which, to furnish a sound basis for proceeding with the necessary investment, are proper and natural for inclusion in a contract for major construction affected with a public interest," and not as precluding changes "which deal with matters of general regulation of the community in a manner closely related to its health, morals, safety, and fundamental welfare." *Id.* at 785-786. By way of example of permissible contractual provisions, the Justices

---

[6] Question 7 asked whether the Legislature, by the proposed § 6A of c. 121A, may authorize cities and towns to provide by contract that a project is not to be affected by any subsequent amendment of c. 121A or any subsequent amendment of any rule, regulation, or standard regulating such project. Question 9 asked whether such a contract will so bind the Commonwealth that subsequent amendments of c. 121A, especially of § 10, which grants tax exemption to redevelopment projects, will not apply to the project. *Opinion of the Justices, supra* at 771-772, 783.

cited (a) the forty-year period provided for in c. 121A, § 10, during which the project would be subject to State and local taxes only in accordance with the contract and the provisions of c. 121A in force at the time of the contract, and (b) an agreement providing "that for a reasonable period the statutory provisions for determining the project owner's income return and dividends would not be altered." *Id.* at 786. The Justices carefully based their discussion and illustrations on a narrow interpretation of § 6A, sanctioning only future immunity from changes in the terms and conditions of the financial arrangement, particularly the § 10 tax concessions, provided for explicitly in c. 121A (see n.2, *supra*). This reading of § 6A was subsequently adopted in *Dodge* v. *Prudential Ins. Co.*, 343 Mass. 375, 388-389 (1961), where this court upheld the validity of the Prudential center project, including the contractual provision authorized by § 6A, the meaning of which is now at issue before us.

We thus conclude that § 6A and par. 4 of the city contract are not to be interpreted as precluding the application of the rent control act to the Prudential apartments.[7] In light of our conclusion, we need express no opinion as to the validity of a statutory provision authorizing a city or town to enter into a contract that in the future would exempt c. 121A housing units from rent control. Whether this type of contractual provision would constitute an impermissible bargaining away of the police power is not before us. See *Boston Elevated Ry.* v. *Commonwealth*, 310 Mass. 528, 548-554 (1942).

Considering the above discussion, we must reject Prudential's argument that the city is estopped from applying the rent control act to the Prudential apartments. Nor

---

[7] In response to the argument that the application of rent control to c. 121A housing units would discourage private entrepreneurs from undertaking redevelopment projects, we merely note that the rent control act exempts new construction, completed on or after January 1, 1969, from coverage under the act. St. 1970, c. 842, § 3 (b) (2).

do we find merit in Prudential's contention that imposing rent control on c. 121A housing units would contravene § 6 of the Home Rule Amendment (art. 89) and § 13 of the Home Rule Procedures Act, G. L. c. 43B.

A judgment is to be entered declaring that the rent control act, St. 1970, c. 842, as accepted by the city of Boston, may be applied to Prudential's residential rental units, constructed pursuant to c. 121A of the General Laws.

*So ordered.*