214 422 Mass. 214

Massachusetts Coalition for the Homeless *v.* Secretary of Health & Human Services.

MASSACHUSETTS COALITION FOR THE HOMELESS & others[1] *vs.*
SECRETARY OF THE EXECUTIVE OFFICE OF HEALTH AND
HUMAN SERVICES & others.[2]

Suffolk. December 5, 1995. - February 29, 1996.

Present: LIACOS, C.J., WILKINS, O'CONNOR, GREANEY, & FRIED, JJ.

*Aid to Families with Dependent Children. Public Welfare,* Department of
Health and Human Services, Department of Public Welfare, Emergency
assistance payments. *Statute,* Appropriation of money. *Housing.
Administrative Law,* Regulations, Agency's interpretation of regulation.

A Superior Court judge correctly concluded that the Department of Public
Welfare was presently acting in a diligent and reasonable manner to uti-
lize limited programs and resources to satisfy its obligations to provide
suitable housing as required by G. L. c. 118, § 2, and the judge properly
declined to order the department to use funds appropriated under an-
other statute to satisfy those obligations. [220-223]
In an action challenging certain regulations of the Department of Welfare
relating to "safe, permanent housing" benefits for homeless families
receiving Aid to Families with Dependent Children, the judge correctly
ruled that the regulations were valid on their face, but the matter was
remanded for further proceedings to consider the plaintiffs' claims that
the regulations are applied in a manner inconsistent with the standards
set forth in governing statutes and regulations. [223-227]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 10, 1985.

Following review reported in 400 Mass. 806 (1987), further
proceedings were had before *Charles M. Grabau,* J., on mo-
tions for summary judgment.

[1]Massachusetts Coalition for Basic Human Needs, Michelle Bennett,
Sandra P. Dowman, Beathel Guyton, and Stacey Reed, acting as representa-
tives of the class of "all homeless AFDC families without feasible alterna-
tive housing, who have been in temporary emergency shelter paid for by
the Department of Public Welfare for more than [ninety] days, without be-
ing relocated to suitable, permanent affordable housing."

[2]The Commissioner of the Department of Public Welfare (department),
the Secretary of the Executive Office of Communities and Development
(EOCD), and the Secretary of the Executive Office of Administration and
Finance (EOAF).

The Supreme Judicial Court granted an application for direct appellate review.

*Barbara Sard* (*Lisa M. Otero & Judith Liben* with her) for the plaintiffs.

*Salvatore M. Giorlandino*, Assistant Attorney General, for the defendants.

*Joshua Greenberg, Jean Zotter & Laura Williams* for the Department of Pediatrics, Boston City Hospital, amicus curiae, submitted a brief.

GREANEY, J. This is a complicated case with a protracted history of litigation which has been ongoing since 1985. The plaintiffs, certified as representatives of the class described in note 1, *supra*, challenge the manner in which the defendants administer housing benefits for homeless families receiving Aid to Families with Dependent Children (AFDC). In a prior phase of the litigation, *Massachusetts Coalition for the Homeless* v. *Secretary of Human Servs.*, 400 Mass. 806 (1987) (*MCH I*), this court considered contentions by a different group of plaintiffs that the Department of Public Welfare (department), and other State defendants, had not properly provided housing benefits to them. In *MCH I*, the court concluded that: "(1) the Legislature has established the AFDC standard of need in recent budgets and that the department acting under G. L. c. 18, § 2 (B) (*g*), has not; (2) the department nevertheless has an annual duty under G. L. c. 18, § 2 (B) (*g*), to review its budgets of assistance; (3) the department has an obligation to advise the Legislature whenever the department concludes the AFDC funds are not sufficient to permit it to provide the level of financial aid described in G. L. c. 118, § 2; (4) the department is directed by G. L. c. 118, § 2, to provide aid sufficient to permit AFDC recipients to live in homes of their own; and (5) there should be further proceedings concerning the declaratory or injunctive relief which may be appropriate as to homeless AFDC families." *Id*. at 812.

On February 15, 1990, following the *MCH I* decision, the plaintiffs filed a supplemental complaint (which they later amended)[3] adding new defendants and restating their claims. In the amended supplemental complaint, the plaintiffs sought

---

[3]The amended supplemental complaint was filed by the Massachusetts Coalition for the Homeless, as plaintiff, and Donna Holland, Kim Luwoyes, and Luz Minerva Rodriguez on behalf of themselves, their minor children, and all families similarly situated, as plaintiff-interveners.

injunctive relief to support declarations (1) that, regardless of the inadequacy of AFDC payments, the department is obligated pursuant to G. L. c. 118, § 2 (1994 ed.), to take "all reasonable steps" with Emergency Assistance (EA) shelter funds to enable homeless AFDC families to live in "accommodations and circumstances which are normally associated with a place of permanent residence," and (2) that homeless AFDC families have the right (a) under G. L. c. 18, § 2 (D) (1994 ed.), and G. L. c. 118, § 2, not to be threatened under the department's housing search regulations with termination of EA shelter for failure to search for, or accept, housing which is too costly to be "feasible," because it will preclude them from bringing up their children "properly," and (b) under G. L. c. 18, §§ 2 (B)(*d*) & 2 (D), and 45 C.F.R. § 233.10 (a) (1) (1994), to ascertainable, objective standards of continuing eligibility that are consistent with governing statutes. The plaintiffs also requested that the court order the department to develop a plan to enable the maximum reasonable number of homeless AFDC families to live in their own homes, or home-like settings, or to demonstrate why such a plan is not possible.[4]

After the Superior Court judge, who has handled the case from its inception, certified the plaintiff class described in note 1, *supra*, the plaintiffs filed a motion for a preliminary injunction in which they sought three forms of relief, similar to the relief requested in several portions of the amended supplemental complaint. The judge granted the defendants' motion to consolidate the hearing on the motion for a preliminary injunction with the hearing on the merits. Subsequently, both parties moved for summary judgment on all the claims in the amended supplemental complaint. See Mass. R. Civ. P. 56 (a) and (b), 365 Mass. 826 (1974). The judge considered the motions and entered a memorandum of decision in which he analyzed the plaintiffs' claims, outlined above, and concluded that (1) "[r]egardless of whether or not the temporary rental subsidy plan [using EA funds] envisioned by plaintiffs is a good idea, it is inappropriate for [the court] to order such relief. Such a program is but one of many potential remedies that defendants could, in their discretion, develop to

---

[4]The plaintiffs sought additional relief not at issue in this appeal.

combat homelessness [among AFDC families]. I must defer to defendants' judgment regarding how they choose to fulfill their obligations," and (2) the department's housing search regulations were a rational attempt to "allocate finite housing resources among an ever increasing group of people." A motion for reconsideration filed by the plaintiffs was denied, and judgment entered making declarations consistent with the judge's rulings and order. The plaintiffs appealed on claims 1 and 3 of their amended supplemental complaint, and we granted their application for direct appellate review. We affirm the judgment as to the plaintiffs' claim that the defendants are not meeting their statutory duty and vacate the judgment on their claim concerning the housing search regulations.

We first set out background information necessary to understanding the legal discussion. *MCH I* describes the AFDC program, its provisions for the determination of standards of need and standards of payment for AFDC beneficiaries, and the Legislature's involvement in the process of determining those standards. 400 Mass. at 812-813. As we concluded in *MCH I*, the Legislature, not the department, has the right to set the standard of need in the annual budget, but to the extent the department concludes that funds appropriated by the Legislature for AFDC are insufficient to provide AFDC recipients with the level of financial aid which will "enable [an AFDC] parent to bring up [a] child or children 'properly in his or her own home,'" G. L. c. 118, § 2, the department is obligated to advise the Legislature of the shortfall. *Id.* at 812-814.

The Executive Office of Health and Human Services (EOHHS) supervises the department (and other State agencies), see G. L. c. 6A, §§ 2, 3, 16 (1994 ed.), and the department, in turn, administers the AFDC program pursuant to G. L. c. 118, § 2. Since *MCH I*, the department has prepared and submitted eight annual reports to the Legislature on the adequacy of AFDC grant levels established by the Legislature in relation to the department's standard budget of assistance for AFDC families, as that budget changes with the consumer price index. These reports have advised the Legislature that the funds appropriated for AFDC purposes, since at least fiscal year 1988, have not been sufficient to permit the department to provide a level of aid to AFDC parents to enable

them to raise their dependent children in their own homes. These reports also have requested that the Legislature appropriate additional funds for AFDC purposes or provide some other solution to the problem. In response to these reports, the Legislature has not appropriated sufficient funds for AFDC purposes or amended G. L. c. 118, § 2.

General Laws c. 18, § 2 (D), authorizes the department "subject to appropriation," to "administer a program of emergency assistance to needy families with children and pregnant women with no other children." Since at least fiscal year 1990, the Legislature's appropriations for the EA program have been separate from its appropriations for the AFDC program.[5] In recent years, legislation requiring the department to use EA funds to pay temporary rental subsidies to homeless families has been introduced in the Legislature, but has not been enacted. Further, since *MCH I*, the Legislature has reduced or eliminated several rent subsidy programs.

The department has adopted housing search regulations, 106 Code Mass. Regs. § 309.040 (B)(7), (C), (D), which became effective January 1, 1994, which require all EA recipients to search for "safe, permanent housing," and require the termination of EA benefits to any recipient who fails to engage in housing searches or rejects four opportunities for "safe, permanent housing."

The Executive Office of Community Development (EOCD) is authorized by G. L. c. 23B, § 3 (1994 ed.), to "review and coordinate the activities of agencies of the commonwealth as those activities relate to emergency and transitional housing; . . . encourage and assist communities in the development, renewal and rehabilitation of their physical environ-

---

[5]In *Blum* v. *Bacon*, 457 U.S. 132, 138 (1982), the United States Supreme Court discussed the relationship between the AFDC and EA programs. "Under Title IV-A of the [Social Security] Act, state public assistance plans approved by the Secretary are eligible for federal financial assistance. AFDC is a major categorical aid program funded under the Act — indeed, it is 'the core of the Title IV-A system.'. . . States are required, as a condition of federal funding under the AFDC program, to make assistance available to all persons who meet statutory eligibility criteria. . . . The EA program is a supplement to such categorical assistance programs as AFDC. It permits federal reimbursement to States which choose to provide for temporary emergency assistance in their Title IV-A plans. In contrast to AFDC, the EA program establishes much broader eligibility standards and is not limited to persons eligible for AFDC." (Citations omitted.)

ment; . . . [and] fund and advance the programs of open and adequate housing for all citizens of the commonwealth, including those displaced by public action within the commonwealth." In keeping with G. L. c. 23B, § 3, EOCD provides housing assistance through a number of programs, including State-aided public housing, Federal Section 8 subsidized housing, and the Federal HOME program. The first two of those programs, State-aided public housing and Federal Section 8 subsidized housing, are used to alleviate homelessness.[6, 7]

The Executive Office for Administration and Finance

[6]EOCD's tenant selection criteria for State-aided public housing appear heavily weighted in favor of homeless or near-homeless people. 760 Code Mass. Regs. § 5.08. The first four priority categories in the order of tenant selection are as follows: (1) homelessness due to displacement by natural forces; (2) homelessness due to displacement by public action (i.e., urban renewal); (3) homelessness due to displacement by publication (i.e., code enforcement); and (4) emergency case categories. With respect to the fourth priority category, local housing authorities (LHAs) are required under 760 Code Mass. Regs. § 5.10 to adopt an emergency case plan that considers the needs of persons who are homeless in abusive situations or encountering severe medical emergencies. In 1992, EOCD issued a model "Standard Emergency Case Plan for LHAs" that addresses the needs of homeless individuals and individuals facing imminent displacement. The model emergency case plan has been adopted by some but not all housing authorities. Most others have emergency case plans adopted since 1986, based on EOCD model plans all of which require that the homeless get priority.

[7]The Federal Section 8 Program is a rental assistance program created by the Federal Housing Act of 1974. It is administered by the United States Department of Housing and Urban Development (HUD) through contracts with public housing agencies, of which EOCD is one. There are approximately 50,000 Section 8 rental subsidy vouchers and certificates in the Commonwealth. EOCD administers approximately 25% of Section 8 subsidies, and LHAs administer the remaining 75%.

EOCD and LHAs administer the Section 8 program under HUD approved administrative plans. 24 C.F.R. § 982.210 (c) (3) (i), (ii), (iii). The plans must include a description of tenant selection procedures, and must conform to congressionally mandated preferences for all Federal housing. The three preferences mandated by Congress are: (1) households living in substandard housing, including those that are homeless; (2) households at risk of involuntary displacement or who have been involuntarily displaced; and (3) households paying more than 50% of income for rent and utilities. 24 C.F.R. §§ 982.211, 982.212, 982.213. Under HUD regulations, EOCD and LHAs are free to rank the three preferences described above in any way they choose. 24 C.F.R. § 982.210 (b).

EOCD's current Section 8 criteria provide significant rental assistanceopportunities for homeless families and households that are at risk of

(EOAF) has no direct involvement in the administration of the AFDC program, but acts, pursuant to G. L. c. 7, § 3 (1994 ed.), "as the principal agency of the executive department of the government of the commonwealth" for "[d]eveloping, co-ordinating, administering and controlling the financial policies and programs of the commonwealth"; "[s]upervising" all executive agencies; and "[d]eveloping new policies and programs."

The parties have compiled a voluminous record consisting of pleadings, affidavits, excerpts of depositions, departmental and other memoranda, fiscal data, legislative budget information, legal briefs, and various other documents. The plaintiffs rely on the materials submitted by them in support of their motion for summary judgment (and in opposition to the defendants' motion for summary judgment) to point out what they perceive as deficiencies in the defendants' administration of the AFDC program as it relates to homeless AFDC families, and they propose that the court enter orders revising the administration of AFDC homeless assistance and the housing search regulations. On the other hand, the defendants argue principally that the plaintiffs' challenges are foreclosed as matter of law. The defendants have also submitted materials supporting what they maintain are adequate State efforts to deal with the problem in the face of inadequate funding and the reduction and limitation of housing assistance programs. The judge concluded that, despite the disagreement between the parties as to the effectiveness of State efforts to meet the goal set by G. L. c. 118, § 2, the judicial intervention and relief sought by the plaintiffs was not proper as matter of law. We turn now to the precise issues raised by the appeal.

1. In claim 1 of their amended supplemental complaint, the plaintiffs assert that the department and EOHHS have a mandatory duty under G. L. c. 118, § 2,[8] to take all reasonable steps to refer or relocate members of the plaintiff class to

becoming homeless. Under the criteria, 80% of Section 8 subsidies are to be awarded to homeless households, at risk-of-homelessness households, and households paying more than 75% of their income toward rent; 10% of Section 8 subsidies are to be awarded to households paying 50% to 74% of their income toward rent; and 10% of Section 8 subsidies are to beawarded to households for non-Federal preferences.

[8]General Laws c. 118, § 2, provides, in relevant part, that "[t]he department shall aid a parent in properly bringing up, in his or her own home, each dependant child . . . . "

422 Mass. 214                                                    221

Massachusetts Coalition for the Homeless *v.* Secretary of Health & Human Services.

suitable, permanent affordable housing, or to provide temporary shelter in more home-like settings.[9] To support this claim, the plaintiffs argue that *MCH I* did not discharge the department from its obligations under G. L. c. 118, § 2, in years when the Legislature failed to set the AFDC payment standard at an adequate level, citing our statement in *MCH I* that: "[A]s long as G. L. c. 118, § 2, directs the department to provide aid sufficient to enable AFDC recipients to have homes, and not just necessities, the department must reasonably seek to fulfill its obligation with such funds as are available for the purpose." *Massachusetts Coalition for the Homeless* v. *Secretary of Human Servs.*, 400 Mass. 806, 823 (1987).[10]

Drawing on this language, the plaintiffs assert EA funds are "available for the purpose" of enabling homeless AFDC families to live in home-like settings, in light of the near identity of purpose and families served in the two programs. The plaintiffs argue that the record establishes, as matter of law, that the defendants have not taken "all reasonable steps" in using EA funds to enable homeless AFDC families to live in home-like settings. The plaintiffs seek judicial orders requiring the defendants to explore strategies involving uses of EA funds which would enable homeless AFDC families to live in home-like settings,[11] and to make a reasoned determination whether any such alternatives can be implemented with already appropriated funds.

*MCH I* does not require the specific type of action proposed by the plaintiffs. General Laws c. 118, § 2, imposes a duty on the department to assist a parent "in properly bringing up, in his or her own home, each dependent child." There is nothing in the statute which mandates that the department use EA funds, which are appropriated under another statute, to achieve this goal in any particular way. Similarly, the EA

[9]The plaintiffs assert that the other defendants acted in concert with EO-HHS and the department to violate the plaintiffs' rights under G. L. c. 118, § 2.

[10]See also *id.* at 822-823 (stating "[I]f a class or classes are certified, a hearing should be held on the nature of any order that might be entered. . . . An order that the department take all reasonable steps to remove each AFDC family from temporary shelter within a stated number of days may be all that can be expected").

[11]The plaintiffs suggest that it would be reasonable, at the very least, for the department to: (1) expand its scattered site shelter program; (2) continue its lapsed transitional housing program; or (3) establish one or more types of "bridge subsidy" programs.

statute, G. L. c. 18, § 2 (D), does not include any language which requires the department to use EA funds in any particular way to satisfy its duty under G. L. c. 118, § 2.[12] While the AFDC and EA programs are related in many aspects, they are not completely coextensive.[13] Since *MCH I,* the department consistently has made the Legislature aware that AFDC appropriations are not sufficient to meet the department's needs under G. L. c. 118, § 2, yet the Legislature has not increased funding or directed the department to use EA funds in some specific way to aid homeless AFDC families. In striving to meet its goal, the department possesses discretion on the extent to which it chooses to use non-AFDC programs and resources to aid homeless AFDC families.

In such a situation, as the judge recognized, it would not be proper for the court to step in and specifically direct the allocation of limited EA resources in designated ways. "Where the Legislature has not imposed specific restrictions on the reasonable methods by which an agency may carry out

---

[12]In relevant part, G. L. c. 18, § 2 (D), provides that "[s]ubject to appropriation, the department shall administer a program of emergency assistance to needy families with children and pregnant women with no other children . . . as defined in 42 USC 606(e), to provide benefits to avoid destitution or to provide living arrangements in a home." The statute orders the department to "promulgate rules and regulations to establish the levels of benefits available under the program" which must include benefits "(d) for the prevention of homelessness, temporary shelter as necessary to alleviate homelessness when such family has no feasible alternative housing available, up to the maximum period subject to federal reimbursement."

[13]The major distinguishing feature between AFDC and EA is that AFDC serves families "deprived of parental support or care," see G. L. c. 118, § 1 (1994 ed.) (definition of "[d]ependent child"), whereas EA serves a broader group. General Laws c. 18, § 2 (D), states the EA program shall be administered "to needy families with children and pregnant women with no other children, . . . as defined in 42 USC 606(e)." As the United States Supreme Court stated in *Quern* v. *Mandley,* 436 U.S. 725, 729 (1978), "[u]nlike AFDC, eligibility for EA is not limited to 'dependent children.' Instead the term 'emergency assistance to needy families with children' is broadly defined in § 406(e) to include . . . aid provided on a temporary basis 'to avoid destitution . . . or to provide living arrangements' for a 'needy child under the age of 21 who is . . . without available resources.'. . . Thus under the EA statute, federal matching funds are available for emergency aid to intact families with children if threatened with destitution, regardless of the cause of their need." (Citation omitted.) Accordingly, for example, EA housing benefits are available to intact EA-eligible families which have lost their housing due to fire or other natural disaster, eviction from private unsubsidized housing, domestic violence, and medical reasons. See 106 Code Mass. Regs. § 309.040 (A) (2).

its mandate in the plain language of the agency's enabling statute, it is not appropriate for the courts to order the agency to follow specific methods for meeting the agency's mandate." *Williams* v. *Secretary of Executive Office of Human Servs.*, 414 Mass. 551, 570 (1993). See *Matter of McKnight*, 406 Mass. 787, 792 (1990) ("[w]here the means of fulfilling [a legal] obligation is within the discretion of a public agency, the courts normally have no right to tell that agency how to fulfill its obligation. . . . Only when . . . there is but one way in which that obligation may properly be fulfilled, is a judge warranted in telling a public agency precisely how it must fulfill its legal obligation" [citation omitted]).

A careful reading of *MCH I* discloses that the language relied upon by the plaintiffs, when examined in context, is subject to the principles just expressed, and was not designed to authorize judicial intrusion into, and oversight of, the department's management of the EA program in the manner sought by the plaintiffs.[14] The judge also properly declined to order the department to present a plan which would enable the maximum reasonable number of homeless AFDC families to live in their own homes, or home-like settings, or to demonstrate why such a plan is not possible. The record before the judge justified the conclusion that the department was

---

[14]The judge also correctly concluded that he could not order the defendants EOHHS, EOCD, and EOAF to use EA funds to further the goals of G. L. c. 118, § 2, because neither G. L. c. 118, § 2, nor G. L. c. 18, § 2 (D), imposes any duties on these defendants. In addition, the enabling statutes governing EOHHS, EOCD, and EOAF do not impose any specific duties on the defendants with regard to the department meeting its G. L. c. 118, § 2, duty. See, e.g., G. L. c. 6A, § 16 (providing "[n]othing in this section shall be construed as conferring any powers or imposing any duties upon the secretary [of EOHHS] . . . except as expressly provided by law"). As stated above, G. L. c. 118, § 2, and G. L. c. 18, § 2 (D), do not impose any duties on the Secretary. The enabling statutes for EOCD and EOAF, meanwhile, give the agencies broad discretion to develop and implement policy choices governing a wide range of people and organizations. On appeal, the plaintiffs have not pursued claim 2 of their amended supplemental complaint, which asserted that EOCD and EOAF had violated their responsibilities under their respective enabling acts.

The plaintiffs attempt to overcome these barriers by citing decisions which they assert hold that resources under one agency's control or supervision, can be reached by a court's equitable power to fashion a remedy for the already found violation of a duty by another agency. None of the decisions, however, refutes the principle that a court may not order a State agency to do something which the law does not require it to do. We find the decisions relied on by the plaintiffs to be inapplicable to this case.

presently acting in a diligent and reasonable manner to utilize limited programs and resources to satisfy its obligations under G. L. c. 118, § 2.

2. Recipients of EA benefits must comply with the departmental regulations set forth in the margin,[15] which require them to search for and accept "safe, permanent" housing, or be subject to the termination of EA benefits. In claim 3 of their amended supplemental complaint, the plaintiffs assert these housing search regulations, as applied, violate governing law.[16] More specifically, the plaintiffs assert that by implementing the regulations without regard to parents' ability to provide properly for their children, the department is violating G. L. c. 18, § 2 (D) (*d*),[17] and G. L. c. 118, § 2, by acting contrary to the Legislature's intention to provide shelter benefits to those income-eligible families with children who lack feasible housing. In addition, the plaintiffs argue that by failing to promulgate a uniform, objective, ascertainable standard of affordability for "safe, permanent" housing, the department is violating: (1) the require-

---

[15]Title 106 Code Mass. Regs. § 309.040 (B)(7) states that a temporary emergency shelter placement shall be subject to the following provision: "The EA household must make all reasonable efforts that can significantly and directly contribute to the household's ability to find, obtain or retain safe, permanent housing by actively looking for safe, permanent housing at least four days per week." Title 106 Code Mass. Regs. § 309.040 (C) states that an EA household shall be considered to be in noncompliance with the requirements for temporary emergency shelter if they "(c) fail[] to cooperate with housing search activities as specified in 106 CMR 309.040 (B)(7)" or "(d) reject[] three opportunities for safe, permanent housing." 106 Code Mass. Regs. § 309.040 (D)(1) then provides that "[a]n EA household shall have its temporary emergency shelter benefits terminated when: . . . (b) an EA household had previously been determined to be noncompliant in accordance with 106 CMR 309.040 (C); . . . (c) the EA household is again noncompliant for one or more of the reasons specified in 106 CMR 309.040(C). For purposes of 106 CMR 309.040 (D)(1)(c), an EA household whose first instance of noncompliance was that the EA household rejected three opportunities for safe, permanent housing, the EA household shall have its temporary emergency shelter terminated if the EA household either rejects one additional opportunity for safe, permanent housing or is determined to be in noncompliance with one or more of the other reasons specified in 106 CMR 309.040 (C)." Any recipient whose benefits are terminated may appeal from that decision to the department's division of hearings pursuant to 106 Code Mass. Regs. § 343.230 (c), and thereafter to the Superior Court pursuant to 106 Code Mass. Regs. § 343.720.

[16]EOCD and EOAF are not listed as defendants in claim 3.

[17]This provision requires the department to provide EA benefits "for the prevention of homelessness, temporary shelter as necessary to alleviate

ment in G. L. c. 18, § 2 (B) (*d*), that the department administer the EA program in a "fair, just, and equitable" manner; (2) the requirement in G. L. c. 18, § 2 (D), that the department administer the EA program "in the best interest of needy recipients"; and (3) 45 C.F.R. § 233.10 (a)(1), which precludes the department from excluding individuals or groups from the EA program "on an arbitrary or unreasonable basis."[18]

To support their various arguments, the plaintiffs have presented affidavits tending to show that the department's agents and employees threaten homeless AFDC families with the loss of their families' housing if the families fail to search for or accept housing that may cost as much as 99% of their income. The defendants, in contrast, have presented the affidavit of the individual who was director of the department's policy division[19] at the time the challenged housing search regulations were promulgated and implemented. In the affidavit, the director states:

> "7. All determinations of non-compliance are made at the Department's Central Office. I have been informed by my staff that no determination of non-compliance has been made by Central Office . . . under the revised regulations in effect since January 1, 1994, . . . for refusal of safe and permanent housing which the client claimed was unaffordable.
>
> "8. The Department interprets the language 'safe and permanent housing' to mean housing that a household can maintain indefinitely."

The judge granted summary judgment to the defendants on the issues raised by the plaintiffs, concluding that the regulations were part of a rational effort by the department to allocate its finite housing resources.

homelessness when such family has no feasible alternative housing available, up to the maximum period subject to federal reimbursement . . . ."

[18]Title 45 C.F.R. § 233.10 (a) (1) also provides "[e]ligibility conditions must be applied on a consistent and equitable basis throughout the state." See *Doston* v. *Duffy*, 732 F. Supp. 857, 871 (N.D. Ill. 1988)(construing 45 C.F.R. § 233.10 [a] [1] as coexistent with the due process clause and concluding State welfare agency violates the due process clause by allowing case workers to make inconsistent arbitrary determinations of cooperation based on factors which the agency does not define).

[19]The policy division is responsible for drafting and implementing the department's regulations.

The judge appears only to have considered the regulations on a facial basis.[20] On their face, the regulations are valid. The plaintiffs take no issue with that conclusion. The plaintiffs correctly concede that the department has discretion to adopt regulations that require EA recipients, including homeless AFDC families, to search for permanent housing and that permit termination of EA benefits to any recipient who fails to engage in a housing search or unreasonably rejects permanent housing opportunities. What the plaintiffs argue is that the regulations are being applied in a coercive manner, and cannot be applied properly in the absence of fixed standards of affordability for "feasible" housing.

We reject the defendants' argument that summary judgment should be upheld because there is no indication in the record that the regulations ever have been applied actually to terminate any recipient's EA benefits. The plaintiffs have presented evidence that homeless AFDC families are, under official departmental policy, being threatened by the department's agents and employees with the loss of EA housing if they fail to search for or accept housing that may cost as much as 99% of their income and that the families have accepted housing they are not able to afford, and will not be able to maintain. The statements of the director of the department's policy division, quoted above, merely contradict the plaintiffs' assertions in general terms and serve to create an issue of fact on the manner in which the housing search regulations are being implemented. Notwithstanding the availability of administrative and judicial review before EA benefits can be terminated for a violation of the housing search regulations, we think the coercion alleged by the plaintiffs (and denied by the department), considered in the context of the dire straits homeless AFDC families find themselves in, is sufficient to require further examination of the application of the regulations.

This examination would inquire as to the substance of the plaintiffs' allegations to ensure that the regulations are being,

---

[20]Although in his memorandum of decision and order on plaintiffs' motion for reconsideration, the judge acknowledged the plaintiffs had moved for reconsideration, in part, because they felt his original decision incorrectly interpreted their challenge as a facial challenge, the judge's ruling does not demonstrate that he ultimately did rule on their challenge as an "as applied" challenge.

and will be, applied in a manner consistent with the standards expressed in governing statutes and regulations. Those standards include the standard expressed in G. L. c. 118, § 2, and G. L. c. 18, § 2 (D) (*d*), and the general requirements that the EA program be administered in a "fair, just, and equitable manner," G. L. c. 18, § 2 (B)(*d*), "in the best interest of needy recipients," G. L. c. 18, § 2 (D), and does not exclude anyone "on an arbitrary or unreasonable basis." 45 C.F.R. § 233.10 (a) (1). A court may conclude that an agency regulation which, as written, may not be arbitrary or irrational has been applied in a manner that produces a result antithetical to purposes of the enabling statute. See *Civetti* v. *Commissioner of Pub. Welfare*, 392 Mass. 474, 485-489 (1984)(rejecting department's interpretation of a regulation it had enacted, finding regulation could not be read, as department asserted, to exclude voluntarily placed children from the status of dependent children for AFDC purposes).

In reevaluating the plaintiffs' third claim, the judge should also consider whether some percentage of income (or some other objective and ascertainable standard) could be used to ensure fair and nonarbitrary application of the housing search regulations. The judge is not obliged to accept the plaintiffs' recommendations of a standard, or to compel the department to adopt one, if he concludes that a general standard is appropriate and can be administered fairly. The plaintiffs ultimately may receive only a declaration that the regulations will be administered without coercion and in a way which meets governing statutes, the language of the regulations ("safe and permanent housing"), and the department's interpretation of that language ("housing that a household can maintain indefinitely").

3. Paragraph 1 of the judgment (disposing of claim 1 in the plaintiffs' amended supplemental complaint) is affirmed. Paragraph 3 of the judgment (disposing of claim 3 in the plaintiffs' amended supplemental complaint) is vacated as to the department, and the case is remanded for further proceedings with respect to the housing search regulations consistent with this opinion. Paragraph 3 of the judgment is affirmed insofar as it grants summary judgment to EOHHS.[21]

*So ordered.*

---

[21]For the reasons discussed, *supra* at note 14, EOHHS is not an appropriate defendant.