AUDREY DOWELL & others[1] *vs.* COMMISSIONER OF
TRANSITIONAL ASSISTANCE.

Suffolk. December 3, 1996. - March 21, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, GREANEY, FRIED, &
MARSHALL, JJ.

*Administrative Law,* Regulations, Agency. *Regulation. Statute,* Construc-
tion. *Social Security Act. Department of Transitional Assistance. Public
Welfare,* Emergency assistance payments.

A regulation promulgated by the Department of Transitional Assistance,
106 Code Mass. Regs. § 309.040(A)(1)(c), which provides that persons
who have been evicted from public or subsidized housing for nonpay-
ment of rent are ineligible to receive emergency assistance benefits was
facially valid and enforceable, where the department has broad author-
ity under G. L. c. 18, § 2(D), to establish eligibility criteria for emer-
gency assistance, and where the regulation was a rational and fair at-
tempt to allocate limited resources and otherwise complied with Federal
requirements. [613-617]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 3, 1995.

The case was heard by *Maria I. Lopez,* J., on motions for
summary judgment and class certification.

The Supreme Judicial Court granted an application for
direct appellate review.

*Peter Sacks,* Assistant Attorney General (*Mary E. Murphy-
Hensley,* Assistant Attorney General, with him) for the Com-
missioner of Transitional Assistance.

*Steven J. Valero* (*Richard M.W. Bauer & Elizabeth E. Crim-
mins* with him) for the plaintiffs.

ABRAMS, J. We consider the facial validity of a regulation
promulgated by the Department of Transitional Assistance
(department) which provides that persons who have been
evicted from public or subsidized housing for nonpayment of

---

[1]Margaret Ratliff and the Massachusetts Coalition for the Homeless
(MCH).

rent are ineligible to receive benefits under the Commonwealth's emergency assistance (EA) program. See 106 Code Mass. Regs. § 309.040 (A) (1) (c) (1995).[2] The plaintiffs, Audrey Dowell, Margaret Ratliff, and the Massachusetts Coalition for the Homeless (MCH), filed a complaint in the Superior Court seeking declaratory and injunctive relief to prevent the department from enforcing the challenged regulation. After hearing arguments, a Superior Court judge allowed the plaintiffs' motions for class certification and for summary judgment, ruling that the regulation exceeds the authority of the department and violates State and Federal law. The judge permanently enjoined the department from implementing the regulation and ordered the provision of specified notice to all class members.[3] We granted the department's application for direct appellate review.

The plaintiffs are homeless persons whose applications for EA temporary shelter benefits were denied based on their eviction from subsidized housing for nonpayment of rent. The plaintiffs have raised only a facial challenge to the regulation as set forth in 106 Code Mass. Regs. § 309.040 (A) (1) (c). Therefore, although we recognize and sympathize with their dire circumstances, we do not reach the issue whether the regulation has been applied to the plaintiffs in a manner inconsistent with the standards expressed in the governing

---

[2]Section 309.040 (A) (1) (a)-(g) of 106 Code Mass. Regs. (1995) provides: *"Homelessness Due to Lack of Feasible Alternative Housing.* (A) *Conditions for the Provision of Benefits.*

"(1) An EA household shall not be eligible for EA benefits if the EA household has rendered itself homeless: (a) for the purpose of making itself eligible for EA; (b) for the purpose of obtaining a housing subsidy; (c) due to an eviction from public and/or subsidized housing for nonpayment of rent; (d) due to an eviction from private, public and/or subsidized housing because an EA household member(s) engaged in criminal activity(ies); (e) due to eviction from private, public and/or subsidized housing for destruction of the property; (f) by having had its temporary emergency shelter benefits terminated for noncompliance as specified in 106 [Code Mass. Regs. § ] 309.040 (D); or (g) by having had its temporary emergency shelter benefits terminated for engaging in criminal activity(ies) as specified in 106 [Code Mass. Regs. § ] 309.040 (C) (5)."

[3]The certified class consists of "all persons eligible for EA who, since March 1, 1995: (a) have requested EA emergency shelter benefits; and (b) whose applications have been, or will be, denied, because they have been, or will be, evicted from public and/or subsidized housing for non-payment of rent." March 1, 1995, is the date on which the challenged regulation became effective.

statutes and regulations. See *Massachusetts Coalition for the Homeless* v. *Secretary of Health & Human Servs.*, 422 Mass. 214, 225-226 (1996); *Berrios* v. *Department of Pub. Welfare*, 411 Mass. 587, 598 (1992).

We note at the outset that a party who attacks the facial validity of a regulation bears the heavy burden of "proving on the record 'the absence of any conceivable ground upon which [the rule] may be upheld.' " *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 776 (1980), quoting *Colella* v. *State Racing Comm'n*, 360 Mass. 152, 156 (1971). That burden cannot be carried "by arguing that the record does not affirmatively show facts which support the regulation." *Id.* For the reasons stated below, we conclude that the plaintiffs have not met their burden. We vacate the judgment and remand for entry of a declaration that 106 Code Mass. Regs. § 309.040 (A) (1) (c) is facially valid and enforceable.[4]

The EA program is a cooperative Federal-State program established under Title IV-A of the Social Security Act, 42 U.S.C. §§ 601 et seq. (1994), whereby participating States receive Federal matching funds to defray the cost of providing temporary aid to needy families with children. General Laws c. 18, § 2 (D), authorizes the department to implement and administer an EA program to "assist eligible families to prevent destitution or to provide living arrangements in the home." EA benefits include emergency payments for rent, mortgage, and utility arrearages, home heating assistance, and temporary shelter for persons without "feasible alternative housing." G. L. c. 18, § 2 (D) (*a*)-(*d*).

The judge interpreted the EA statute as granting the department only the authority to establish the *levels* of benefits available under the program, and not the discretion to create exceptions as to who is eligible to receive those benefits.[5] The judge determined that, because the challenged regulation

---

[4]The department also claims error in the judge's certification of the case as a class action, arguing that certification is not a superior method of adjudication and that the plaintiffs failed to show that the proposed class is so numerous that joinder of its members is impracticable. See *Carpenter* v. *Suffolk Franklin Savs. Bank*, 370 Mass. 314, 318 (1976); Mass. R. Civ. P. 23, 365 Mass. 767 (1974). We need not decide this issue because, as we hold that the regulation is valid on its face, clearly a prospective plaintiff must challenge the regulation on an "as applied" basis.

[5]General Laws c. 18, § 2 (D), provides: "Subject to appropriation, the department shall administer a program of [EA] to needy families with chil-

denies EA based on the cause of the homelessness rather than on the need for temporary shelter, the regulation exceeds the department's statutory authority and conflicts with the legislative intent to "alleviate homelessness" by providing "temporary shelter as necessary." The judge also held that the regulation violates G. L. c. 18, § 2 (B) (*d*), because the regulation is not "fair, just and equitable," and violates 45 C.F.R. § 233.10 (a) (1) (1994) because it is "arbitrary and unreasonable."

Our review is guided by the well-established principle of administrative law that "[r]egulations are not to be declared void unless their provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate, and enforcement of such regulations should be refused only if they are plainly in excess of legislative power" (citations omitted). *Berrios, supra* at 595-596. On appeal, the department argues that the judge erred in examining the language and purpose of G. L. c. 18, § 2 (D), in isolation, without considering the broad authority granted the department by other provisions of that same statute. See *id.* at 595. We agree.

"Provisions of legislation addressing similar subject matter are to be construed together to make an harmonious whole consistent with the legislative purpose and to avoid rendering any part of the legislation meaningless" (citations omitted). *Healey* v. *Commissioner of Pub. Welfare*, 414 Mass. 18, 25-26 (1992). See *Tebo* v. *Board of Appeals of Shrewsbury*, 22 Mass. App. Ct. 618, 627 (1986) ("an agency's powers are shaped by

dren and pregnant women with no other children, subject to and in accordance with the Social Security Act of 1935, as defined in 42 [U.S.C. § ] 606(e), to provide benefits to avoid destitution or to provide living arrangements in a home. The commonwealth shall accept matching funds from the appropriate federal authorities for said program.

"Said program of [EA] shall assist eligible families to prevent destitution or to provide living arrangements in the home.

"The department shall promulgate rules and regulations to establish the levels of benefits available under the program and to ensure simplicity of administration in the best interest of needy recipients. Such benefits shall include, but not be limited to, the following:—

" . . .

"(*d*) for the prevention of homelessness, temporary shelter as necessary to alleviate homelessness when such family has no feasible alternative housing available, up to the maximum period subject to federal reimbursement . . . ."

its organic statute taken as a whole"). General Laws c. 18, § 2 (A), states that "the department shall provide and administer throughout the commonwealth a comprehensive public welfare financial assistance program, including the following services . . . the determination of eligibility for the categorical public assistance provided under the Federal-State programs." Section 2 (B) (*a*) explicitly authorizes the department to "formulate the policies, procedures and rules necessary for the full and efficient implementation of [public welfare financial assistance] programs" which are under the department's control, including the EA program. These statutory provisions are a "generous grant of rulemaking authority" from which an implication of the department's authority to adopt the challenged regulation is readily derived. See *Massachusetts Respiratory Hosp.* v. *Department of Pub. Welfare,* 414 Mass. 330, 334 (1993). See also *Berrios, supra* at 595 ("all rational presumptions are to be made in favor of [a regulation's] validity" [citations omitted]).

Nor does the language of the EA statute conflict with the department's authority to adopt the challenged regulation. See, e.g., *Telles* v. *Commissioner of Ins.,* 410 Mass. 560, 564-565 (1991). The plaintiffs argue that we must read the use of the word "shall" in the phrase "such benefits shall include" as a legislative mandate requiring the provision of EA benefits to all families in need, thereby prohibiting the department from establishing eligibility criteria for the program. See *supra,* note 5. However, in this context, the word "shall" directs the department as to the type of benefits which must be made available under the EA program, and not as to the persons eligible to receive them. We also construe G. L. c. 18, § 2 (D), in light of the language set forth in annual line item appropriations for the EA program. See *Berrios, supra* at 594. Specifically, the EA appropriations provide that "in promulgating, amending, or rescinding its *regulations with respect to eligibility* or benefits, and any other benefits under this program, the Department shall take into account the amounts available to it for expenditures by this item so as not to exceed the appropriation" (emphasis added). St. 1995, c. 38, § 2, item 4403-2110 (Fiscal Year 1996 General Appropriation Act). See St. 1994, c. 60, § 2, item 4403-2110 (Fiscal Year 1995 General Appropriation Act) (same language). When read as an "harmonious whole," *Healey, supra* at 25-26, the

statute and line item appropriations indicate the legislative intent to grant the department broad authority to establish eligibility criteria for EA, which is precisely what the challenged regulation does.

In establishing such eligibility criteria, the department still must fulfil its obligation under G. L. c. 18, § 2 (B) (*d*), to provide assistance "on a fair, just and equitable basis." See, e.g., *Correia* v. *Department of Pub. Welfare*, 414 Mass. 157, 164 (1993). The judge held that the challenged regulation violates that statutory obligation because it "results in a denial of [EA] benefits to many families who are not at 'fault' " for their homelessness. Although this may be true with respect to those families, we reiterate that to succeed on a facial challenge the plaintiffs must show not that the regulation is unfair as to some families, but rather that the regulation could never be applied on a "fair, just and equitable basis." See *Purity, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 776 (1980). The department asserts that the regulation is a rational and fair attempt to allocate limited resources so as to maximize EA benefits for those needy families who have not previously received substantial government benefits.

"It is within the discretion of an agency to determine priorities for allocation of resources among services where the enabling statute does not itself clearly establish particular priorities." *Williams* v. *Secretary of Human Servs.*, 414 Mass. 551, 567 (1993). See *Massachusetts Coalition for the Homeless* v. *Secretary of Health & Human Servs.*, 422 Mass. 214, 221-222 (1996). Funding for the EA program is limited. The EA statute directs the department to administer the EA program "subject to appropriation," see *supra*, note 5, and the line item appropriations provide that "in promulgating . . . its regulations with respect to eligibility or benefits . . . the [d]epartment shall take into account the amounts available to it for expenditures . . . so as not to exceed the appropriation." *Supra* at 614.

Tenants of public and subsidized housing pay rent that is set at well below market rates, and they also can have their rental obligation reduced to reflect an adverse change in their income. See 760 Code Mass. Regs. §§ 7.05 (2), 49.08 (9) (b) (1993). Tenants of public and subsidized housing also have the advantage of greater procedural protections against eviction than tenants of private housing. See G. L. c. 121B, § 32;

42 U.S.C. § 1437d (k) (1) (4) (1994) (providing that tenants of State and Federal public housing may not be evicted except for good cause). See also, e.g., 760 Code Mass. Regs. §§ 2.03 (6) (b), 3.01 (3); 24 C.F.R. §§ 966.4 (f), 966.4 (1) (1996) (entitling tenants of State and Federal public housing to a grievance hearing before the commencement of eviction proceedings); 760 Code Mass. Regs. § 3.02 (6); 24 C.F.R. § 966.57 (b) (granting tenants of State and Federal public housing the right to an administrative appeal of adverse decisions). Because of these substantial benefits, tenants of public and subsidized housing may have less reason for losing their housing due to an eviction for nonpayment of rent. Consequently, the department promulgated the challenged regulation to preserve and maximize EA benefits for families facing shelter crises who have had no other available housing assistance and have not received the advantages afforded to public and subsidized housing tenants. The department claims that the regulation is designed to encourage public and subsidized housing tenants to use up the alternative mechanisms available to keep them in their housing, thereby reducing the overall number of families who are in need of EA. "We realize that applications of the regulation to particular facts may prove difficult but that issue is not before us." *Rock* v. *Massachusetts Comm'n Against Discrimination*, 384 Mass. 198, 208 (1981).

In light of the department's statutory obligation to administer EA within its budgetary constraints, judicial intrusion which directs the department to allocate limited EA resources in designated ways would be improper. See *Massachusetts Coalition for the Homeless, supra* at 222; *Williams, supra* at 567, 570. We think that on its face the challenged regulation satisfies the "just, fair and equitable" standard set forth in G. L. c. 18, § 2 (B) (*d*).

For the same reason, we conclude that on its face the challenged regulation satisfies the standard set forth in 45 C.F.R. § 233.10 (a) (1) as well.[6] Federal law does not impose any "mandatory eligibility standards on States that elect to partic-

---

[6]Section 233.10 (a) (1) of 45 C.F.R. (1994) provides that a State plan must "[s]pecify the groups of individuals, based on reasonable classifications, that will be included in the [EA] program, and all the conditions that must be met by the individuals in the groups. The groups selected for inclusion in the plan and the eligibility conditions imposed must not exclude

ipate in the EA program." *Quern* v. *Mandley,* 436 U.S. 725, 747 (1978). As long as a State does not arbitrarily or inequitably exclude a class of recipients, a "State retains considerable flexibility in determining which emergencies to cover under its EA plan." *Blum* v. *Bacon,* 457 U.S. 132, 139 (1982).[7] Here, the department reasoned that public and subsidized housing tenants have already received the substantial government benefits of scarce housing at a reduced cost and special procedural protections against eviction from that housing for nonpayment of rent. The department promulgated the challenged regulation to improve allocation of EA benefits to needy families who have received no such assistance. The efficacy of the regulation is not before us. Similarly, the fact that the regulation may not be the best available means for achieving the statutory purpose also is not before us. In these narrow circumstances, the challenged regulation is neither arbitrary nor inequitable on its face.

We vacate the judgment and remand for entry of a declaration that 106 Code Mass. Regs. § 309.040 (A) (1) (c) is facially valid and enforceable.

*So ordered.*

---

individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals . . . ."

[7]The plaintiffs argue that the challenged regulation violates the standard set forth in 45 C.F.R. § 233.10 (a) (1) because of its similarity to *Blum* v. *Bacon,* 457 U.S. 137, 139 (1982), in which the United States Supreme Court held that a New York statute categorically denying EA benefits to Aid to Families with Dependent Children (AFDC) recipients was arbitrary and inequitable in violation of the Federal standard. We note that, in *Blum,* the United States Secretary of Health and Human Services (who is charged with administering Federal funding for EA), specifically had determined that the New York statute was inconsistent with the Federal standard, especially in light of strong legislative history indicating that Congress intended AFDC recipients to be eligible for EA. See *id.* at 139-140. The *Blum* Court merely deferred to the Secretary's reasonable determination that the plan was in violation of 45 C.F.R. § 233.10 (a) (1). See *Blum, supra* at 145. That is not the case here.