Crown Elec. Supply Co. *v.* State Office of Minority and Women Business Assistance Appeal Bd.

CROWN ELECTRIC SUPPLY CO. *vs.* STATE OFFICE OF MINORITY AND WOMEN BUSINESS ASSISTANCE APPEAL BOARD.

No. 99-P-778.

Suffolk. February 13, 2001. - June 4, 2001.

Present: PORADA, GILLERMAN, & GELINAS, JJ.

*State Office of Minority and Women Business Assistance. Regulation. Administrative Law,* Regulations, Substantial evidence.

This court concluded that the State Office of Minority and Women Business Assistance had authority, conferred by implication by virtue of G. L. c. 23A, § 44, cl. 10, added by St. 1993, c. 495, § 12, to promulgate regulations relating to the certification of a "women-owned business." [754-756]

Regulations promulgated by the State Office of Minority and Women Business Assistance, 425 Code Mass. Regs. §§ 2.00 et seq., that added to the criteria for certification as a "women-owned business" the requirement that the business enterprise have an investment by one or more women, were not in harmony with the statutory objective of G. L. c. 23A, § 39, exceeded the prerequisites of G. L. c. 7, § 40N, and thus were void; however, a regulatory requirement that an applicant seeking such certification prove that it was independent from nonwomen-owned businesses was valid. [756-761]

Substantial evidence supported a decision by the State Office of Minority and Women Business Assistance to deny a company certification as a "women-owned" business because of its failure to prove its independence from a nonwomen-owned business. [761-762]

CIVIL ACTION commenced in the Superior Court Department on June 9, 1997.

The case was heard by *Allan van Gestel,* J.

*Judith S. Yogman,* Assistant Attorney General, for the defendant.

*Katherine E. Perrelli* for the plaintiff.

PORADA, J. The principal issues presented by this action are the validity of State regulations governing the certification of a "women-owned business," 425 Code Mass. Regs. §§ 2.00 et seq. (1994), for purposes of qualifying for favorable treatment

754                51 Mass. App. Ct. 753 (2001)

Crown Elec. Supply Co. *v.* State Office of Minority and Women Business Assistance Appeal Bd.

in the award of contracts on capital facility projects under G. L. c. 7, § 40N, and the qualification of the plaintiff, Crown Electric Supply Co. (CES), as such. When CES's application for certification as a "women-owned business" was denied by the defendant, CES sought judicial review of this decision in the Superior Court. Upon a motion for judgment on the pleadings, a Superior Court judge determined that the State Office of Minority and Women Business Assistance (SOMWBA) was without statutory authority to promulgate regulations and that the regulations that were promulgated imposed more stringent and substantively different requirements than the controlling statute, G. L. c. 7, § 40N. Accordingly, he remanded the action to SOMWBA to reconsider its decision based on the criteria set forth in G. L. c. 7, § 40N. After a lengthy dispute arose as to whether the judge's decision was final and, therefore, appealable, the judge vacated his remand order and entered final judgment setting aside SOMWBA'S decision. As an additional ground for his decision, the judge ruled that based on the criteria set forth in G. L. c. 7, § 40N, SOMWBA's decision was not supported by substantial evidence.

On appeal, SOMWBA argues that the judge erred in ruling that the regulations applied by SOMWBA in this case are invalid and that SOMWBA's decision is unsupported by substantial evidence. We affirm in part and reverse in part.

1. *Statutory authority for the regulations.* The judge found that SOMWBA did not have the authority to promulgate regulations. SOMWBA counters that the regulations in question are valid because they were promulgated by the executive director of the Office of Minority and Women Business Development and Employment (OMWBDE), who was authorized to "adopt, amend, alter or repeal and . . . enforce, all such reasonable rules, regulations and orders as may be necessary or suitable for the administration and performance of the duties of OMWBDE as set forth in sections thirty-nine to forty-four, inclusive [of G. L. c. 23A]." G. L. c. 23A, § 39A. Because one of the duties with which the executive director of OMWBDE is charged is the oversight of SOMWBA's operations, SOMWBA argues that the executive director had the authority to promulgate regulations governing SOMWBA's operations. While we agree that

this argument has merit, we need not decide the issue because we agree with the Superior Court judge that the regulations at issue were not promulgated by OMWBDE but by SOMWBA. Our opinion is based on the notice of the promulgation of those regulations, 736 Mass. Reg. § 106 (March 25, 1994), which lists SOMWBA and not OMWBDE as the filing agency for the regulations at issue in this case.

However, we disagree with the judge that SOMWBA lacked the authority to promulgate regulations. Although G. L. c. 23A, § 44, which outlines the powers and duties of SOMWBA, does not expressly provide SOMWBA with the authority to adopt regulations, we conclude that that authority is conferred by implication by virtue of G. L. c. 23A, § 44, cl. 10, added by St. 1993, c. 495, § 12, which provides, "SOMWBA shall impose administrative penalties on an applicant for certification or recertification that knowingly provides false or misleading information on its application or in support of its application for certification or recertification as a minority or women-owned business, or on a person who fails to comply with any provision of any regulation or approval issued or adopted by the agency or of any law which the agency has the authority or responsibility to enforce." Recognizing "that a regulation may be authorized though not traceable to specific statutory language, [and] that powers granted include those reasonably implied," *Beth Israel Hosp. Assn.* v. *Board of Registration in Med.*, 401 Mass. 172, 176 (1987), we conclude that SOMWBA had the authority to promulgate regulations relating to the certification of a "women-owned business."[1]

Our conclusion is buttressed further by the language of St. 1994, c. 102, § 24, an emergency act approved by the Legislature on August 23, 1994, which provides in relevant part: "Notwithstanding the provisions of any general or special law to the contrary, each executive office, agency, commission, authority or political subdivision may initiate certification of minority and women business enterprises in a manner consistent

---

[1]We note that *Sturdy* v. *State Office of Minority & Women Bus. Assistance*, 409 Mass. 587, 589 (1991), concluded that G. L. c. 23A, §§ 40-44, did not give SOMWBA the power to promulgate regulations. *Sturdy*, however, was decided prior to the addition of cl. 10 to § 44.

with the rules and regulations promulgated by the state office of minority and women business assistance." At the time of its passage, no legislation had been enacted expressly authorizing SOMWBA to adopt regulations. Accordingly, it is evident that the Legislature believed that it had bestowed this power upon SOMWBA by virtue of the provisions of G. L. c. 23A, § 44, cl. 10, enacted in the preceding year. The judge, thus, was in error when he ruled that SOMWBA did not have the authority to promulgate regulations.

2. *Validity of the regulations.* SOMWBA argues that the regulations establishing the criteria for certification of a "women-owned business" do not exceed, and are not inconsistent with, its legislative mandate. We recognize that administrative "[r]egulations are not to be declared void unless their provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." *Dowell* v. *Commissioner of Transitional Assistance*, 424 Mass. 610, 613 (1997), quoting from *Berrios* v. *Department of Pub. Welfare*, 411 Mass. 587, 595-596 (1992).

Under G. L. c. 7, § 40N, SOMWBA is charged with preparing a list of women-owned businesses, as defined in that statute, which qualify for the award of contracts on capital facility projects, a portion of which is reserved for women-owned businesses. To qualify under § 40N as a "women-owned business," the business must meet the following criteria: "(1) the business must be at least fifty-one per cent owned by women; in the case of a corporation having more than one class of stockholders, the ownership requirement must be met as to each class of stock; (2) the women owners must demonstrate that they have dominant control over management; (3) the business has not been established solely for the purpose of taking advantage of a special program which has been developed to assist women businesses." SOMWBA's specific powers and duties are further defined in G. L. c. 23A, § 44, including the preparation of a list of minority and women-owned businesses in the Commonwealth and the giving of notice to them of programs and services available to them. As used in G. L. c. 23A, § 40, a "women business enterprise" is defined as "a business enterprise that is both owned and controlled by one or

more women who have invested in an ongoing business free of conversion rights." Pursuant to those statutes, SOMWBA promulgated regulations setting forth the criteria for certification as a "women's business enterprise." 425 Code Mass. Regs. §§ 2.00 et seq. (1994). Under its regulations, a women's business enterprise must (1) be owned by one or more women; (2) be free of any conversion rights; (3) have an investment by one or more women; (4) be woman controlled; (5) be ongoing; and (6) be independent. 425 Code Mass. Regs. § 2.03(4)(a)(1)-(6) (1994).

In rejecting CES's application, SOMWBA found that CES did not meet the investment and independent criteria set forth in its regulations. In reversing the agency's decision, the Superior Court judge held that the agency had added requirements for qualification as a women-owned business in its regulations which exceeded those set forth in G. L. c. 7, § 40N, in particular the requirement of investment by one or more women, and, thus, had hindered the statutory purpose of assisting and aiding the growth of women-owned businesses in this field.

We focus our discussion on the two regulatory requirements on which the agency's decision turned, investment and independence. We address first SOMWBA's regulatory requirement that a "women-owned business" have an investment by one or more women. Investment is defined in its regulations to mean "[a] substantial personal investment by the eligible principal(s) equal to 51% or more of the total financial and non-financial investments in the applicant." 425 Code Mass. Regs. § 2.05 (1994). Although investment is not one of the prerequisites listed in G. L. c. 7, § 40N, for certification of a "women-owned business," SOMWBA seizes upon the definition of a "women business enterprise" set forth in G. L. c. 23A, § 40, as a basis for its regulations. Section 40 provides that as used in §§ 41-44 of G. L. c. 23A, unless a contrary intent is clearly indicated, " 'women business enterprise', for the purpose [of] receipt of services from SOMWBA means a business enterprise that is both owned and controlled, by one or more women who have *invested* in an ongoing business free of conversion rights" (emphasis supplied). Based on this definition, SOMWBA argues that there must be an investment by one or more women in the

business for it to qualify as a "women-owned business." However, SOMWBA overlooks the fact that "women business enterprise" is defined for the "purpose [of] receipt of services" from SOMWBA and not for the purpose of certification as a "women-owned business." Sections 41-44 of G. L. c. 23A deal solely with the administrative structure of SOMWBA and its powers and duties. General Laws c. 7, § 40N, on the other hand, deals with the requirements for a "women-owned business" to be eligible for favorable treatment in the award of contracts on capital facility projects, and mandates that "[n]o portion of contracting or subcontracting work reserved for minority-owned businesses under the provisions of this section shall be awarded to any women-owned businesses not meeting the requirements of a minority-owned business under this section; nor shall any portion of contracting and subcontracting work reserved for women-owned businesses under the provisions of this section be awarded to any minority-owned business not meeting the requirements of a women-owned business under this section." In light of the specific requirements for certification of a "women-owned business" spelled out in G. L. c. 7, § 40N, we do not think that the Legislature expanded those requirements by simply departing from its definition of a "women-owned business" in § 40N in defining a "women business enterprise" under the provisions of G. L. c. 23A, §§ 40-44.

Our view is further buttressed by the fact that a "women-owned business" is equated with a minority-owned business under G. L. c. 7, § 40N. In defining a "minority business enterprise" for purposes of G. L. c. 23A, § 40, the Legislature's definition is consistent with that of a minority-owned business set forth in G. L. c. 7, § 40N, and makes no reference to a requirement that a minority owner have invested in the business. It appears unlikely that the Legislature would have intended to add investment to the certification requirements of a "women-owned business" in enacting G. L. c. 23A, § 40, but not those of a minority-owned business when it was obviously the intent of the Legislature that they be treated in the same manner. See G. L. c. 7, § 40N, and G. L. c. 23A, §§ 40-44.

SOMWBA next argues that it is reasonable to impose an

investment requirement to insure that the business is truly owned by one or more women in order for the agency to fulfill its mandate of aiding and assisting women-owned businesses. As the Superior Court judge noted in his decision, there is a distinction to be drawn between "ownership" and "investment." Ownership refers to the holding of legal or rightful title to property, while investment refers to the commitment of capital for a financial return. See Webster's Third New Intl. Dictionary 1190, 1612 (1993). Section 40N specifies "ownership" as a criteria and not "investment." If the Legislature had intended to add "investment" by one or more women, it could have easily done so. Further, SOMWBA's regulation requiring proof of a substantial financial investment by the principal(s) equal to 51% or more appears to undermine the purpose of the statute which is to aid women-owned businesses to achieve viable economic status. Few people starting out in business would have the necessary unencumbered assets to invest in a business that would meet the investment regulations promulgated by SOMWBA. As such, we are of the opinion that so much of SOMWBA's regulations that require an investment by the applicant in the business and define "investment" are not in harmony with the statutory objective of G. L. c. 23A, § 39, exceed the prerequisites of G. L. c. 7, § 40N, and thus are void.[2]

We now turn to examine the validity of SOMWBA's regulation requiring that the business be independent.[3] On its face, this requirement does not appear to be inconsistent or exceed

[2]Because we conclude that the regulation requiring investment is void, we need not reach the issue whether the plaintiff met this criteria.

[3]In rendering his decision, the Superior Court judge focused on the investment requirement of the regulations rather than on the requirement of independence. We believe it is appropriate to apply to the regulations the same principles of severability we apply to legislation. See *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977) (administrative regulations are to be tested by the same standard we apply to statutes).

We, thus, are of the opinion that SOMWBA's requirement that the business enterprise be shown to be independent can be separated from the regulatory requirement of investment and thus can stand even though we have declared the regulatory requirement of investment void. See *Del Duca* v. *Town Administrator of Methuen*, 368 Mass. 1, 13 (1975) ("[w]henever various portions of a statute have independent force, thus justifying the inference that the

those prerequisites for certification of a "women-owned business" in § 40N, which require that women have dominant control of the business and that the business has not been established to take advantage of the special legislation enacted to assist women-owned businesses in the construction field. The regulatory requirement of independence[4] is obviously designed to insure that those prerequisites are met, and appears

enacting body would have passed one without the other, this court will uphold the remainder of the enactment after the offending portion has been struck").

[4]Under 425 Code Mass. Regs. § 2.05 (1994), independent means

"(a) That the applicant is not dependent upon, affiliated with, or influenced by, legally or in practice, another person, business enterprise or organization in connection with any key elements of its day-to-day or long-term affairs, including contracts, sales, operations, technical affairs, equipment, facilities, supplies, employees, workforce, consultants, subcontracts, leases, financing, income, payroll, bookkeeping, goodwill, policies or management; and

"(b) That the applicant does not rely on or regularly utilize to perform work it contracts to perform any employee or workforce who, while performing work for the applicant, is in the course of employment with or under the direct control of a person, business enterprise or organization other than the applicant, with the exception of temporary office personnel working in the normal course of the applicant's activity(ies); and

"(c) The applicant does not rely on or regularly utilize to perform work it contracts to perform any management or supervisory personnel other than those persons it directly employs and controls.

"(d) An applicant shall not be considered independent if it presents insufficient evidence of having the capability or capacity to perform, with its own workforce, equipment, facilities or other functional assets the work it contracts to perform.

"(e) The temporary employment or direct control by another person, business enterprise or organization of an applicant's employee(s) or workforce does not by itself constitute a lack of independence if the applicant is a temporary employment service and the temporary employment or control of the employee(s) or workforce occurs in the normal course of the applicant's business.

"(f) Any one of the following conditions creates a rebuttable presumption that the applicant is not independent:

    1. one or more eligible principals is currently an employee of a non-minority or non-woman owned or controlled business enterprise or organization which has a direct or indirect financial or controlling interest in, or influence on, the applicant; or

    2. one or more of the governing body members, officers, management officials, key employees or supervisory personnel of the applicant are substantially the same as in a non-minority or non-woman owned or controlled business enterprise or organization which has a direct

to be in harmony with the objectives of G. L. c. 7, § 40N, and G. L. c. 23A, § 39. We conclude that the regulatory requirement that the business enterprise be independent is valid.

3. *Substantial evidence.* SOMWBA concluded that CES did not meet the independence requirement of its regulations. SOMWBA found that CES was an affiliate of Crown Supply Co. (Crown) of Rhode Island, a company owned by the brother of the president and owner of CES. Its conclusion was based on its findings that the two companies had similar names; CES received most of its initial inventory from Crown; CES obtained credit based on Crown's reputation; CES obtained its key employee from Crown; the key employee's resume indicates that he is a "branch manager" of CES, which implies that it has more than one location; the two companies regularly trade stock; and a business card used by CES represented Lynne Donahue as president of CES and Crown. Although CES offered evidence that it paid Crown for its inventory, that it was the custom of companies doing similar business to trade stock, that the credit extended to CES was the result of an arm's length business transaction, and that the business cards that implied that CES had another location in Rhode Island were simply intended to make the business look larger, its credibility lay within SOMWBA's province. See *Hotchkiss* v. *State Racing Commn.,* 45 Mass. App. Ct. 684, 696 (1998). Even if we would have arrived at a different result on the evidence presented, we cannot

---

or indirect financial or controlling interest in, or influence on the applicant; or

3. the applicant is a subsidiary or affiliate of a non-minority or non-woman owned or controlled business enterprise or organization; or

4. one or more eligible principals, or the applicant, is a former employee, employer, affiliate or subsidiary of a person, business enterprise or organization that is in the same or related industry as the applicant and which:

   a. has a direct or indirect financial or controlling interest in, or influence on, the applicant, or

   b. assisted or assists one or more eligible principals or the applicant to obtain or utilize any of the financial or non-financial resources the applicant uses."

substitute our judgment for that of the agency if its decision was supported by substantial evidence, which means such evidence as a reasonable mind might accept as adequate to support the conclusion reached. *Ibid.* With deference to the agency's experience and specialized knowledge, we conclude that the evidence was sufficient for the agency to conclude that CES was not independent from Crown. The most telling evidence was Crown's practice of ordering goods for CES and itself, the exchange of stock between Crown and CES, and CES's issuance of business cards which represented an affiliation.[5] Accordingly, we conclude that SOMWBA's decision to deny certification was based on substantial evidence.

In sum, we determine that SOMWBA had the authority to promulgate regulations within its statutory mandates. That authority, however, did not extend to the promulgation of regulations adding to the criteria for certification as a "women-owned business" the requirement that the business enterprise have an investment by one or more women as set forth in the regulations at issue. We also conclude that SOMWBA could properly promulgate regulations requiring an applicant seeking such certification to prove that it was independent from non-women-owned businesses and, further, that SOMWBA's decision to deny certification to CES because of its failure to prove its independence was based on substantial evidence.

Accordingly, the judgment of the Superior Court is vacated, and a new judgment is to be entered affirming the May 8, 1997, decision of the SOMWBA Appeal Board.

*So ordered.*

---

[5]There was also evidence in the record that CES had applied for certification in Rhode Island as a "women-owned business"; however, the record discloses only one business location for CES and that is in Massachusetts.